# BURLINGTON INDUSTRIES *v.* Alice PICKETT

98-1398                                              988 S.W.2d 3

Supreme Court of Arkansas
Opinion delivered March 4, 1999

*Friday, Eldredge & Clark*, by: *Guy Alton Wade*, for appellant.

*Baim, Gunti, Mouser, De Simone & Robinson*, by: *Judith De Simone*, for appellee.

*David Pake*, for Second Injury Fund.

L AVENSKI R. SMITH, Justice. This is an appeal from a decision of the Workers' Compensation Commission. It involves a single issue. That issue is whether the Commission's award of interest on incurred medical expenses paid by a claimant's health insurance carriers is supported by substantial evidence. The case is before this Court on a grant of petition for review pursuant to Ark. Sup. Ct. R. 1-2(e)(i).

Appellants, Burlington Industries, and its workers' compensation insurance carrier, Liberty Mutual Insurance Company, contend that the Commission erroneously included interest on medical payments in its award to appellee, Alice Pickett. The gravamen of their argument is that such an award is contrary to the company's express duties under Workers' Comp. Comm. R. 30 and the public policy of cost containment it created. We agree and reverse.

The relevant facts of this matter are undisputed. Pickett, a long time employee of Burlington Industries, sustained an injury to her back in May of 1990. Appellee subsequently underwent two back surgeries. Pickett sought workers' compensation benefits for the injury but her employer, Burlington Industries, controverted the claim. An order issued by the Administrative Law Judge (ALJ) in February 1994 resolved the matter in Pickett's favor, and the full Commission approved it in June 1994. In the meantime, Pickett's medical expenses were paid for by private health insurance carriers rather than by her employer's workers' compensation carrier, Liberty Mutual. The ALJ's order awarded temporary total disability benefits commencing May 25, 1990, and required her employer and its carrier, appellant's herein, to pay past and future medical expenses attributable to the injury. It also included an award for attorney's fees and interest pursuant to Ark. Code Ann. § 11-9-809 (Repl. 1996).

The matter returned to the attention of the Workers' Compensation Commission in a March 1996 hearing. Pickett, at that time, provided appellants and the Commission with claims for approximately $100,000 in Pickett's accrued medical expenses, paid by her or her husband's private group health insurance carriers during the pendency of the compensation case. This sum also included paid deductibles, miscellaneous out of pocket expenses and travel expenses. Pickett provided the expenses in summary form based on the logs of the group health insurers with little or no detail as to the relation of the service to Pickett's injury or information to ascertain the reasonableness of the charges. Appellants' witness testified at the hearing, and it is apparent that their handling of the case in response to the 1994 Commission order left much to be desired. Appellants had failed to pay temporary total disability as ordered by the Commission and had only paid $150.00 in medical expenses. However, they had only been presented with the one bill for $150.00.

The ALJ's decision, filed October 31, 1996, found that Pickett's healing period ended September 22, 1994; that she was entitled to temporary total disability payments from the date of the injury to the end of her healing period; that she suffered permanent impairment and was permanently and totally disabled; that

Burlington and Liberty Mutual were responsible for payment of permanent total disability benefits, reasonable related medical, hospital, and nursing expenses, and that they had failed to pay. The ALJ also assessed penalties and interest pursuant to Ark. Code Ann. §§ 11-9-802(b) and 11-9-809 respectively.

Appellants acceded to the ALJ's order in all points except payment of interest on incurred medical expenses paid by Pickett's or her husband's private medical carriers. The single issue regarding interest was appealed to the full Commission on July 31, 1997. Appellants contended that they should not be required to pay interest on medical bills that were not submitted to them in any form until the March 1996 hearing. The Commission, after a de novo review, affirmed the ALJ's decision to award interest on incurred medical expenses. The Arkansas Court of Appeals reviewed the case pursuant to appeal from the Workers' Compensation Commission. The Court of Appeals deadlocked with three votes to affirm and three votes to reverse resulting in affirmance of the Commission's order. We granted a petition for review.

■ ■ Upon a petition for review, we consider a case as though it were originally filed in this court. *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 32 (1998). On appeal in a workers' compensation case from the Court of Appeals to this Court, the evidence must be viewed in the light most favorable to the Commission's decision, and its decision must be upheld if supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

Appellants contend here, as they did below, that it was improper for the Commission to require them to pay interest back to the initial ALJ determination of entitlement because Pickett did not provide her medical bills to them until the day of the second ALJ hearing on March 1, 1996, and then only provided totals. Appellants assert that the Commission's ruling is contrary to the provisions of Workers' Comp. Comm. R. 30. Rule 30, promul-

gated pursuant to Ark. Code Ann. § 11-9-517 (1987), established a medical-cost-containment program. The Rule contains six parts and is a comprehensive measure with extensive provisions regarding proper procedures for payment of medical costs. These include the following pertinent subsections:

Part I (A), entitled "Scope":

This rule does all the following:

(a) Establishes procedures by which the employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable and necessary medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of the state as legal, when needed. The employer shall also supply to the injured employee dental services, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus, and other appliances necessary to cure, so far as reasonably and necessarily possible, and relieve from the effects of the injury.

(e) Establishes a system for the evaluation by a carrier of the appropriateness in terms of both the level of and the quality of health care and health services provided to injured employees, based upon medically accepted standards.

(f) Authorizes carriers to withhold payment from, or recover payment from, health facilities or health care providers which have made excessive charges or which have required unjustified and/or unnecessary treatment, hospitalization, or visits.

(m) Provides for uniformity of billing for provider services.

Part I (F), entitled "Definitions":

(4) "Bill" means a request by a provider submitted to a carrier for payment for health care services provided in connection with a covered injury or illness.

. . .

(55) "properly submitted bill" means a request by a provider for payment of health care services submitted to a carrier on the appropriate forms which are completed pursuant to this rule.

Part I (I), entitled "Payment":

(1) A carrier shall not make a payment for a service unless all required review activities pertaining to that service are completed.

The policy behind these provisions is evident, i.e., avoidance of unjustified medical costs. Rule 30 contemplates carriers having medical bills submitted to them according to certain guidelines which would enable them to verify the merit and accuracy of claims. It is obvious that the design of the Rule is to control medical costs for the benefit of all affected by workers' compensation laws. In the instant case the full Commission rejected appellant's argument that Rule 30's procedures for submission of medical bills are prerequisite to a carrier's payment obligation. However, there is nothing in Rule 30 which implies its requirements are discretionary. When reviewing the Commission's interpretation and application of its rules, we give the Commission's interpretation great weight. *Mohawk Rubber Co. v. Buford*, 259 Ark. 614, 535 S.W.2d 819 (1976). However, if an administrative agency's interpretation of its own rule is irreconcilably contrary to the plain meaning of the regulation itself it may be rejected by the courts. *Id.* at 619. *Harness v. Arkansas Public Serv. Comm'n*, 60 Ark. App. 265, 962 S.W.2d 374 (1998).

The plain meaning of Rule 30 does not establish a duty on the part of a carrier to pay until claims meeting its requirements are properly submitted. It is undisputed that no medical bills were submitted to appellants prior to March 1, 1996, the date of the second hearing. While appellants apparently did not do all they could have done to expedite the case, we do not read the Commission's rules as requiring carriers to seek out claimant's medical providers. Pickett also carried some responsibility in making sure that expense claims were properly submitted for payment. We, therefore, hold that the Commission's award of interest on incurred medical expenses was erroneous and not supported by substantial evidence where the facts indicate the expenses were not identified or submitted for payment in accordance with Rule 30. Accordingly, we reverse.

Reversed and remanded.