Jimmy WHITE *v.* GEORGIA-PACIFIC CORPORATION

99-647                                                     6 S.W.3d 98

Supreme Court of Arkansas
Opinion delivered December 16, 1999

*Robert L. Depper, Jr.*, for appellant.

*Mark Alan Peoples, PLC*, by: *Mark Alan Peoples*, for appellee.

Donald L. Corbin, Justice. Appellant Jimmy White appeals the decision of the Arkansas Workers' Compensation Commission denying him disability benefits. The Arkansas Court of Appeals affirmed the Commission's decision in *White v. Georgia-Pacific Corp.*, 66 Ark. App. 337, 989 S.W.2d 942 (1999). We granted White's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e). White's argument on appeal is meritorious, and we reverse the Commission's decision.

### Standard of Review

Upon a petition for review, we consider a case as though it had been originally filed in this court. *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Pickett*, 336 Ark. 515, 988 S.W.2d 3; *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

### Facts and Procedural History

The record reflects that White was employed as a forklift driver at Appellee Georgia-Pacific's plant in Crossett. His employment responsibilities consisted of continually loading four veneer dryers with lumber. While at work on May 5, 1997, White injured his foot and ankle after he slipped on a step covered with algae. White fell approximately two to three feet from his forklift as he attempted to step through a door located in front of one of the dryers. At the time White was injured, he was on his way to an area adjacent to his work station so that he could smoke a cigarette during his work break.

White testified before the Commission that he was supposed to be provided three scheduled work breaks per shift: two ten-minute breaks and one twenty-minute break. White further testified that he is frequently unable to utilize his ten-minute breaks because his employer consistently failed to provide relief staff to

cover his work station. Because of this lack of relief staff, White would try to get ahead on his loads, and then take a break to smoke a cigarette in an area where he could view his work station and immediately return to work if necessary. White testified that on the evening he was injured his supervisor told him to take a break "when [he] could."

The area where White went to smoke was not the designated smoking area, but he testified that he did not go to the designated area because he would not be able to see his work from there. White also testified that he was not required to perform any job-related duties in the area where he smoked. He further admitted on cross-examination that he had turned his forklift off prior to the accident because he was not working when he got off the forklift. On redirect, however, White explained that he was instructed to turn his forklift off anytime he got off it for safety purposes. White further testified that it was necessary for him to observe the dryers during these break times in the event one of them needed his attention.

Georgia-Pacific denied White's claim for workers' compensation benefits, alleging that he was not performing employment services at the time of his injury. A hearing was conducted before an administrative law judge (ALJ), who concluded that White failed to demonstrate that he was performing employment services at the time of his injury. White appealed this finding to the Commission, arguing that the ALJ's decision was contrary to the law and the facts of the case. After conducting a *de novo* review of the record, the Commission adopted the findings and affirmed the decision of the ALJ.

White then appealed to the court of appeals arguing, (1) that there was not substantial evidence to support the Commission's decision, and (2) that the injury is compensable under the personal-comfort doctrine. The court of appeals held that there was substantial evidence to support the Commission's finding that White was not performing employment services at the time of his injury and that the injury was not compensable under the personal comfort doctrine. While we agree that the injury is not compensable under the personal-comfort doctrine, we disagree that there was substantial evidence to support the Commission's decision.

*Employment Services*

Act 796 of 1993, which applies to all injuries incurred after July 1, 1993, initiated important changes in the workers' compensation statutes. Relevant to the case at bar is the change that excludes from the definition of "compensable injury" any injury received by an employee at a time when employment services are not being performed. Ark. Code Ann. § 11-9-102(5)(B)(iii) (Supp. 1997). Further, Act 796 requires that the provisions of the workers' compensation statutes be strictly construed. Ark. Code. Ann. § 11-9-704(c)(3) (Repl. 1996). The Act, however, does not in any way define the term "employment services."

■ Section 11-9-102(5)(A)(i) provides that an accidental injury causing internal or external harm arising out of and in the course of employment is a compensable injury. We have held that the test for determining whether an employee was acting within the "course of employment" at the time of the injury requires that the injury occur within the time and space boundaries of the employment, when the employee is carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997); *Pilgrims Pride Corp. v. Caldarera*, 54 Ark. App. 92, 923 S.W.2d 290 (1996).

■ Related to the issue of whether an injury arose in the course of employment is the requirement that the employee be performing "employment services" at the time of the injury. The court of appeals has held that when an employee is doing something that is generally required by his or her employer, the claimant is providing employment services. *See Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999); *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998).

In the present matter, Georgia-Pacific argues that White was on a personal break and not performing any employment services; thus, his injury is not compensable. This argument ignores the fact that someone had to monitor the dryers, whether it be White or a relief worker. Because there was no relief worker provided, White was forced to remain near his immediate work area in order to monitor those machines. If one of the dryers needed to be loaded or his supervisor needed him for some reason, White would have

been forced to return to his forklift immediately. Georgia-Pacific's argument also ignores the fact that White's supervisor instructed him to take a break "when he could."

We believe the present situation is analogous to the facts presented in *Ray*, 66 Ark. App. 177, 990 S.W.2d 558. In *Ray*, appellant was employed by the University of Arkansas as a food-service worker in a cafeteria. She was entitled to two unpaid thirty-minute breaks and two paid fifteen-minute breaks each day. During one of her paid breaks, appellant slipped and fell as she was getting a snack from the cafeteria for her own personal consumption. The Commission denied appellant's claim for disability benefits after determining that she was not performing employment services at the time of her injury. The court of appeals reversed the Commission's decision, noting that White was paid for her fifteen-minute breaks and was required to assist student diners if the need arose. Based on those facts, the court of appeals held that the employer gleaned benefit from appellant being present and required to aid students on her break. Likewise, in this matter Georgia-Pacific also gleaned benefit from White remaining near his work station in order to monitor the progress of the dryers and immediately return to work if necessary.

We recognize the rigorous standard of review applied in reviewing workers' compensation cases, but we have previously held that we will reverse the Commission if we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion reached by the Commission. *Deffenbaugh*, 313 Ark. 100, 852 S.W.2d 804. We cannot ignore the fact that what seems to be lacking the most in this case is the type of substantial evidence needed to support the Commission's decision. .

■ This court has previously addressed the issue of what constitutes substantial evidence in the context of a workers' compensation case. In *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (1979), this court stated:

> Substantial evidence has been defined as "evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture." Ford on Evidence, Vol. 4, § 549, page 2760. Substantial evidence has also been defined as "evidence

furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Wigmore on Evidence, Vol. IX, 3rd ed. § 2494, footnote at page 300. See also *Tigue v. Caddo Minerals Co.*, 253 Ark. 1140, 491 S.W.2d 574, *Goza v. Central Ark. Dev. Council*, 254 Ark. 694, 496 S.W.2d 388.

*Id.* at 330–31, 584 S.W.2d at 25 (quoting *Aluminum Co. of America v. McClendon*, 259 Ark. 675, 535 S.W.2d 832 (1976)).

Georgia-Pacific argues that White's own testimony about the nature of his breaks is sufficient evidence to support the Commission's decision. In her statement of the case, the ALJ mistakenly reported that White conceded on cross-examination that his unofficial breaks were not sanctioned by his employer. White simply testified, however, that he did not know whether or not the breaks were sanctioned by his employer. More importantly, Georgia-Pacific presented no evidence to rebut White's testimony on several critical points: (1) that he was entitled to a ten-minute break after completing two hours of his shift; (2) that Georgia-Pacific failed to provide White with a relief worker so that he could take his break; (3) that White's supervisor told him to take a break whenever he got the chance; and (4) that it was necessary for White to take his break in the area adjacent to his work station in order for him to monitor the dryers.

Georgia-Pacific also points to White's testimony that he did not consider himself to be working at the times that he took these breaks. While it is true that White was not loading the dryers at these times, he was in fact monitoring them, which was a required part of his job duties. White testified that it was necessary to watch the dryers and load them as the need to do so arose. It was this fact that necessitated the presence of a relief worker. Due to the fact that Georgia-Pacific failed to provide such relief staff, it was necessary for White to monitor the dryers, even when it was time for one of his breaks.

Based on the foregoing, we cannot say that there was substantial evidence to support the Commission's determination that White was not performing employment services at the time of

his injury. We reverse on this point and remand the case to the Commission for the determination of benefits.

GLAZE, J., concurs and is of the opinion that when an employer, as a matter of policy, establishes work breaks, an employee's injury sustained during the break may be compensable.