Henry PIFER *v.* SINGLE SOURCE TRANSPORTATION

01-807 69 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered March 7, 2002

---

*Dowd, Harrelson, Moore & Giles,* by: *Greg Giles,* for appellant.

*Huckabay, Munson, Rowlett & Tilley, P.A.,* by: *Carol Lockard Worley* and *Julia L. Busfield,* for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant, Henry A. Pifer, was injured at work while returning to his truck from the restroom. The employer, Single Source Transportation, contested his claim for workers' compensation benefits. The Administrative Law Judge found that Mr. Pifer sustained an injury arising out of and in the course of his employment. In construing Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2001), the Arkansas Workers' Compensation Commission reversed the ALJ's award and dismissed Mr. Pifer's claim. The Commission found that Mr. Pifer was not performing employment services at the time of the accidental injury. The Arkansas Court of Appeals, in a 4-2 unpublished opinion, reversed the Commission's decision and remanded for further consideration consistent with *Matlock v. Arkansas Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001). *See Pifer v. Single Source Transportation,* CA 01-86, slip op. (Ark. App. July 5, 2001). This court accepted Single Source's petition for review pursuant to Ark. Sup. Ct. R. 1-2(e) (2001). On appeal, Mr. Pifer contends that the Commission erred in its interpretation of Ark. Code Ann. § 11-9-102(4)(B)(iii). We agree, and reverse the Commission's decision.

## Standard of Review

■■ Upon a petition for review, we consider a case as though it had been originally filed in this court. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

## Facts

Henry A. Pifer worked as a truck driver for Single Source Transportation during a seven-year period prior to the accident. On June 7, 1999, Mr. Pifer returned to his employer's terminal after delivering a load around 11:15 a.m. At that point, according to Mr. Pifer's testimony, he was in need of a restroom break: "I had to go to the bathroom very bad and when I pulled around, I just locked the truck down — when I say locked down, I mean the brakes, and I run in to use the bathroom." The truck was left running. After using the restroom upstairs in the office, he spoke briefly with two co-workers and started to return to the truck to do his paperwork, complete his log book, secure the truck, and do a safety check. While returning to his truck, Mr. Pifer was hit on the left side of his back by a co-worker's pickup, knocking him five to six feet. Had he not been injured, Mr. Pifer testified that he would have done his paperwork, secured the truck, done a post check on the truck, turned in his paper work, and gone home after checking to see if there was another load for him that day.

## Employment Services

■ The pivotal issue presented by this case is whether, pursuant to Act 796 of 1993, codified at Ark. Code. Ann. §§ 11-9-101, *et seq.* (Repl. 1996, Supp. 2001), Mr. Pifer was performing employment services when he sustained an injury while on a restroom break at an employer-provided restroom located on the employer's premises.[1] To evaluate Mr. Pifer's claim and the full Commission's

---

[1] Because the issue to be resolved in this appeal is whether Mr. Pifer was performing employment services at the time of the accident, we need not address the nature and extent

decision, we are called upon to interpret the phrase "in the course of employment" and the term "employment services" as used in Ark. Code Ann. §§ 11-9-102(4)(A)(i) and 11-9-102(4)(B)(iii) (Supp. 2001). When interpreting a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001); *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998).

■ Act 796 of 1993 made significant changes in the workers' compensation statutes and in the way workers' compensation claims are to be resolved. *White v. Georgia-Pacific Corp., supra.* Claims arising from injuries occurring before the effective date of Act 796 (July 1, 1993) were evaluated under a liberal approach. *Eddington v. City Electric Co.*, 237 Ark. 804, 376 S.W.2d 550 (1964); Ark. Stat. Ann. § 81-1325(b)(4) (Supp.1979). However, Act 796 requires us to strictly construe the workers' compensation statutes. Ark. Code. Ann. § 11-9-704(c)(3); *White v. Georgia-Pacific Corp., supra.* The doctrine of strict construction directs us to use the plain meaning of the statutory language. *Edens v. Superior Marble & Glass, supra*, and *Lawhon Farm Servs. v. Brown, supra.*

■ Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when *employment services* were not being performed. . . ." Ark. Code Ann. § 11-9-102(4)(B)(iii) (emphasis added). However, Act 796 does not define the phrase "in the course of employment" or the term "employment services," *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). It, therefore, falls to this court to define these terms in a manner that neither broadens nor narrows the scope Act 796 of 1993. Ark. Code Ann. § 11-9-1001 (Repl. 1996). When the meaning of a statutory term is ambiguous, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000).

■■ Since 1993, we have twice been called upon to construe the statutory language found in sections 11-9-102(4)(A)(i) and 11-

---

of his injuries.

9-102(4)(B)(iii). *See White v. Georgia-Pacific Corp., supra,* and *Olsten Kimberly Quality Care, supra.* We have held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer. . . ." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100. We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *White v. Georgia-Pacific Corp., supra; Olsten Kimberley, supra.* The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.,* 339 Ark. at 478, 6 S.W.3d at 100 and *Olsten Kimberly, supra.*

 It is well-settled that any interpretation of a statute by this court subsequently becomes a part of the statute itself. *Night Clubs, Inc. v. Fort Smith Planning Comm'n,* 336 Ark. 130, 984 S.W.2d 418 (1999); *Burns v. Burns,* 312 Ark. 61, 847 S.W.2d 23 (1993). The General Assembly is presumed to be familiar with this court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. Without such amendments, however, our interpretations of the statutes remain the law. *Lawhon Farm Servs. v. Brown, supra; Sawyer v. State,* 327 Ark. 421, 938 S.W.2d 843 (1997). Although aware of our interpretation of the term "employment services" in *White v. Georgia-Pacific Corp.* and *Olsten Kimberley,* the General Assembly has not changed section 11-9-102(4)(A)(i) or section 11-9-102(4)(B)(iii), other than to renumber those sections. *See* 2001 Ark. Acts 1757 and 1999 Ark. Acts 20. Accordingly, this court's interpretation of the pertinent statutory language remains the law.

 Mr. Pifer would have this court either reaffirm the personal-comfort doctrine[2] or hold that a restroom break is a necessary

---

[2] The personal-comfort doctrine states that:

Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

Arthur Larson, *The Law of Workmen's Compensation* § 21 (2001). Prior to Act 796 of 1993, this court adopted the personal-comfort doctrine in workers' compensation cases. *Coleman's Bar-B-Que v. Fuller,* 262 Ark. 645, 559 S.W.2d 714 (1978).

function and directly or indirectly advances the interests of the employer. Conversely, Single Source contends that an employee is not performing employment services during a restroom break, or any personal break, because the personal-comfort doctrine is not consistent with a strict construction of Act 796. Since the enactment of Act 796, we have not directly addressed the personal-comfort doctrine.[3] To automatically accept a personal-comfort activity as providing employment services would impermissibly broaden the requirements of Act 796. On the other hand, to automatically reject a personal-comfort activity as not providing employment services would impermissibly narrow the requirements of Act 796. Instead of following either extreme position, the critical issue is whether the employer's interests are being advanced either directly or indirectly by the claimant at the time of the injury. In addressing this issue, we decline to adopt the factors identified by the court of appeals in *Matlock v. Blue Cross Blue Shield, supra.*

 ██ We note that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment.[4] As the court of appeals reasoned in *Matlock v. Blue Cross, supra*:

> Restroom facilities are provided in work settings because eliminating bodily toxins and wastes are natural and ordinary biological processes. Employers provide restroom facilities for the benefit of their customers, to be sure. But they also provide those facilities to accommodate their workers so as to avoid the work interruptions and delays that would certainly occur if workers were forced to leave the employment premises in order to find a public restroom at some distance from the work, their supervisors, and customers.

---

[3] We disagree with the statement by the court of appeals in *Beavers v. Benton County,* 66 Ark. App. 153, 991 S.W.2d 618 (1999), that "the personal-comfort doctrine is no longer the law." *Id.* at 155. This court agreed in *White v. Georgia-Pacific Corp.* that the claimant's injury was not compensable under the personal-comfort doctrine. *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). However, we reversed the Commission's decision in that case on the ground that substantial evidence did not support the Commission's determination that the claimant was not performing employment services at the time of his injury. *Id.*

[4] "[T]he wants ministered to are so obviously in the category of necessities that no question arises about their being basically in the course of employment. The only issue on which compensation is sometimes denied is that of seeking these facilities in an unreasonable manner." Arthur Larson, *The Law of Workmen's Compensation* § 21.05 (2001).

*Matlock v. Blue Cross Blue Shield,* 74 Ark. App. at 341-42, 49 S.W.3d at 139. Like the appellant in *Matlock,* Mr. Pifer had gone to a restroom provided by his employer and was returning to resume the employer's work when the accident occurred that resulted in his injuries. His conduct in returning to his truck was entirely consistent with the employer's interest in advancing the work. Everything in the record before us indicates that Mr. Pifer was engaged in conduct permitted by the employer, if not specifically authorized by the employer, and that the employer provided restroom facilities on its premises.

Based on the record in this case, we hold that Mr. Pifer's restroom break was a necessary function and directly or indirectly advanced the interests of his employer. Consequently, his injury is not excluded from the definition of "compensable injury" under section 11-9-102(4)(B)(iii) because the injury did not occur at a time when he was not performing employment services. The Commission's decision based on an incorrect interpretation of the law must, therefore, be reversed. In so holding, we overrule all prior decisions by the Arkansas Court of Appeals to the extent that they are inconsistent with this opinion.

Finally, Single Source contends that substantial evidence supports the Commission's decision because Mr. Pifer stopped momentarily to speak with co-workers before returning to his truck. In support of that argument, Single Source cites a recent decision by court of appeals, *Clardy v. Medi-Homes LTC Serv. LLC,* 75 Ark. App. 156, 55 S.W.3d 791 (2001). The instant case is clearly distinguishable. Unlike Ms. Clardy, Mr. Pifer was not injured while talking with his co-workers.

Reversed and remanded for a determination of benefits.