Tony MONCUS *v.* BILLINGSLEY LOGGING
& American Insurance Company

05-1353                                                  235 S.W.3d 877

Supreme Court of Arkansas
Opinion delivered May 18, 2006

*Hart Law Firm, L.L.P.*, by: *Neal L. Hart*, for appellant.

*Michael E. Ryburn*, for appellees.

BETTY C. DICKEY, Justice. The appellant, Tony Moncus, was killed in an automobile collision on August 19, 2003, while following his employer, the appellee, to a jobsite. Following a hearing, an administrative law judge determined that Moncus's death was not compensable, because he was not performing employment services at the time of his death. The Arkansas Workers' Compensation Commission (hereinafter the Commission) affirmed and fully adopted the decision of the administrative law judge. The Arkansas Court of Appeals then affirmed the decision of the Commission. We granted the appellant's petition for review of that decision pursuant to Ark. Sup. Ct. R. 1-2(e). We reverse the decision of the Commission.

Tony Moncus (Moncus) was a logger employed by Billingsley Logging, which is owned by Mitchell Billingsley (Billingsley). Moncus operated a wood cutting machine, and he was paid a fixed sum per ton of wood felled. The loggers would generally travel directly from their homes to the jobsite to begin work, due to their familiarity with the area in which the logging operations normally took place. However, on the day of the accident, logging was slated to begin on a tract of land, the whereabouts of which were known only to Billingsley. Billingsley therefore instructed the loggers to assemble at a central location so that they could then follow him to the jobsite. On this particular day, the loggers were required to meet at the prearranged location, because otherwise they would not be able to find the jobsite. Because the loggers were generally familiar with the location of any particular jobsite, this was an unusual situation, which occurred perhaps four or five times in a year. Although the other loggers would travel to the unknown site by following Billingsley in company vehicles, Billingsley had given Moncus permission to use his own truck, because Moncus needed to leave work early that day. After all the loggers had arrived that morning, the vehicles left the meeting place, following Billingsley in convoy fashion. Before arriving at the job site, Moncus was involved in the collision that caused his death.

Moncus's representatives then filed a claim on his behalf for workers'-compensation benefits, which was denied by an administrative law judge. The full Commission affirmed that decision and the Commission's decision was subsequently affirmed by the court of appeals. The appellant brings this appeal from the Commission's decision.

Upon a petition for review, we consider a case as though it has been originally filed in this court. *Edens v. Superior Marble & Glass,* 346 Ark. 487, 58 S.W.3d 369 (2001); *Estridge v. Waste Mgmt.,* 343 Ark. 276, 33 S.W.3d 167 (2000); *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999).

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Hapney v. Rheem Mfg. Co.,* 341 Ark. 548, 26 S.W.3d 771 (2000); *Burlington Indus. v. Pickett,* 336 Ark. 515, 988 S.W.2d 3 (1999). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.,* 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Minnesota Mining & Mfg. v. Baker,* 337 Ark. 94, 989 S.W.2d 151 (1999). Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Davis v. Old Dominion Freight Line, Inc.,* 341 Ark. 751, 20 S.W.3d 326 (2000); *Johnson v. American Pulpwood Co.,* 38 Ark. App. 6, 826 S.W.2d 827 (1992).

A compensable injury is "an accidental injury . . . arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). A compensable injury does not include injuries suffered at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii). An employee is performing employment services when she is doing something that is generally required by her employer. *Pifer v. Single Source Transp.,* 347 Ark 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee was acting in the course of employment as we do when determining whether the employee was performing employment services. *Id.* The test is whether the injury occurred "within the time and space boundaries of employment, when the employee was carrying out the employer's purpose or advancing the employer's interest either directly or indirectly." *White,* 339 Ark. at 478, 6 S.W.3d at 100.

An employee traveling to and from the workplace is generally said not to be acting within the course of employment. *Olsten Kimberly Quality Care v. Pettey,* 328 Ark. 381, 944 S.W.2d 524

(1997). This "going and coming" rule ordinarily precludes recovery for an injury sustained while the employee is going to or coming from his place of employment. *Id.* The rationale behind this rule is that an employee is not within the course of employment while traveling to or from his job. *Id.* However, there are exceptions to this rule. *Id.* One such exception is where the employee must travel from jobsite to jobsite, whether or not he or she is paid for that travel time. *Id.* (quoting ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 16.01 (1996)). The rationale behind this exception is that where the employee is required to travel from jobsite to jobsite, such travel is an integral part of the job itself. *Id.*

In *Olsten Kimberly Quality Care v. Pettey, supra,* we held that injuries sustained by a nurse while on her way to the home of a patient were compensable, even though she was not paid for the travel. There, we noted that the employee was not required to report to the employer's office each day, but instead often went directly from her home to the home of a patient, where she began to work. In reaching our conclusion, we held that the travel was clearly for the benefit of the employer, whose business was to provide in-home nursing care. Additionally, we stated:

> [t]he fact that appellee had yet to begin her nursing duties that day does not preclude our conclusion that she was nonetheless performing employment services at the time of the accident. Whether or not she was being directly compensated for her travel is not pertinent to our decision, as the facts of this case clearly demonstrate that travel was a necessary part of her employment.

*Pettey,* 328 Ark. at 387, 944 S.W.2d at 527. Similarly, the travel in the present case was a necessary part of Moncus's employment, and it fits within the jobsite-to-jobsite exception to the "going and coming" rule. Moncus had no fixed place of employment, and was obliged to travel from jobsite to jobsite as indicated by Billingsley. Also, Billingsley testified that the loggers would occasionally switch jobsites in the middle of the day. Thus, the travel from jobsite to jobsite was an integral and necessary part of Moncus's employment.

In cases of this type, where the injury occurs outside of the time and space boundaries of employment, the critical determination to be made is whether the employee was directly or indirectly advancing the interests of the employer at the time of the

injury. The "going and coming" rule is best viewed as an analytical tool to be used in making this determination. Our last consideration of the "going and coming rule," in *Pettey, supra,* indicates that the rule is subordinate to the preeminent consideration, which is whether the employee was directly or indirectly advancing the interests of the employer at the time of the injury. If injuries sustained while traveling to and from work are found to be not compensable in a particular case, that finding should reflect a determination that the travel was not directly or indirectly furthering the interests of the employer. To the extent that the "going and coming rule" prevents recovery for injuries sustained while the employee was furthering the interests of the employer, it is overruled.

■ Here, it is significant that Moncus was carrying out the express directions of his employer at the time of the accident, even though he was not engaged in the activity for which he was primarily employed. This court has held several times that an employee is performing "employment services" when she "is doing something that is generally required by his or her employer." *Pifer,* 347 Ark. at 817, 69 S.W.3d at 18; *Collins v. Excel Specialty Prods.,* 347 Ark. 811, 69 S.W.3d 14 (2002); *White,* 339 Ark. at 478, 6 S.W.3d at 100; *Pettey,* 328 Ark. 381, 944 S.W.2d 524. Thus, in *White v. Georgia Pacific, supra,* we held that injuries sustained by an employee while on a smoke break were nevertheless compensable, because the employee was required to monitor his work area during the break. Also, the court of appeals, in a line of cases, has held that injuries suffered by an employee while on a break are compensable if the employer has imposed some duty to be fulfilled by the employee during the break. *See, e.g., Wal-Mart Stores v. King,* 93 Ark. App. 101, 216 S.W.3d 648 (2005) (the employee was required to assist customers during breaks); *Wal-Mart Stores v. Sands,* 80 Ark. App. 51, 91 S.W.3d 93 (2002) (the employee was required to return personal items to a locker after the break); *Ray v. University of Arkansas,* 66 Ark. App. 177, 990 S.W.2d 558 (1999) (the employee was required to come off break in order to assist students). The instant case is analogous. Even though Moncus was not performing his primary employment activity of felling trees when he was injured, he was fulfilling a duty placed upon him by his employer.

In this case, the Commission fully adopted the findings and conclusions of the administrative law judge. The administrative law judge concluded that Moncus's death was not compensable because he was not performing employment services at the time of the accident, and specifically that Moncus was not advancing his employer's interests at the time of the accident. In reaching this conclusion, the administrative law judge reasoned as follows:

> [a]lthough the employees meet Mr. Billingsley and follow him to the tract of land on the first day that timber is cut from such tracts, it cannot be said that their travel to the tract of land advances the employer's purpose or interest on those days any more than any other day when the employees travel to the tract of land where the timber is to be cut.

This conclusion is clearly erroneous. Billingsley testified that the logging crew functions as a team, and the absence of one member frustrates the whole operation. Specifically, Billingsley testified as follows:

> I need everybody in my crew because they have a different job to perform. The benefit of Tony showing up for work is that I would have somebody to operate that piece of equipment. If he did not show up, that would have hurt my crew and productivity for that day.

Thus, on the day in question, Billingsley was particularly concerned that the logging crew arrive intact and on time to the new jobsite, and for this reason he instructed them to meet him at the assembly point, so he could ensure that result. Accordingly, Billingsley stated the following at the hearing before the Commission, "I wanted the guys to meet me at the service station because they did not know where they were going and I did. I wanted them to follow me to the tract of land to make sure they got there. So I could conduct my business." The meeting was mandatory, not optional.

The present situation is readily distinguishable from the usual "going and coming" scenario, where on any particular day the employee has no interaction and receives no instructions from his supervisor until after his arrival at the place of employment. Here, on the day of the accident, Moncus was doing something specifically required by his employer. Moncus had already arrived at a place specified by his employer, met with his employer there,

and received express and immediate instructions, which he was performing at the time of the accident. Billingsley instructed Moncus to join the "convoy" and follow him to the jobsite. Thus it was Billingsley, not Moncus, who dictated Moncus's route, his rate of speed, and his order of advance immediately prior to the accident, as well as the time of arrival and departure from the meeting place and the location of the meeting place. In a real sense, his employer was responsible for Moncus's precise location on the road at the time of the accident.

■ Thus, we conclude that because Moncus's death occurred while he was carrying out the express and immediate instructions of his employer, doing something specifically required by his employer, and because by the employer's admission, the meeting at the assembly point was an unusual measure undertaken to further the employer's interest by insuring that the logging crew arrived at the jobsite intact, the Commission's conclusion that Moncus was not performing employment services at the time of his death was clearly erroneous. That conclusion was not supported by substantial evidence, and reasonable minds could not have reached the same conclusion. Therefore, we reverse the Commission's decision and remand for a consideration of benefits.

Reversed and remanded.