Cite as 2022 Ark. App. 12

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-244

| | |
|---|---|
| WAL-MART ASSOCIATES, INC.<br>APPELLANT<br><br>V.<br><br>WILLIE ANDERSON AND DEATH &<br>PERMANENT TOTAL DISABILITY<br>TRUST FUND<br><br>APPELLEES | **Opinion Delivered** January 12, 2022<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G901750]<br><br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Wal-Mart Associates, Inc. (Wal-Mart), appeals the opinion of the Arkansas Workers' Compensation Commission (Commission) finding that Willie Anderson proved that he sustained compensable injuries to his pelvis, left leg, and left hip while performing employment services. Wal-Mart argues on appeal that the Commission's opinion is not supported by substantial evidence. We affirm.

At the hearing before the administrative law judge (ALJ), Anderson testified that he had been a truck driver for Wal-Mart since 1992. He stated that in March 2019, he was living in Arkadelphia, but his employment was based in Searcy. He described his typical weekly work schedule: On Monday night, he would drive his personal vehicle from his home in Arkadelphia to Searcy, and he would spend the night in a Wal-Mart truck. On Tuesday morning, he would take care of his paperwork and load his personal items for the week (clothes, food, water, an ice chest, a small refrigerator, and bedding) into the truck. He stated that Wal-Mart allows its

drivers to load their personal items in Wal-Mart trucks so the drivers do not have to stop on the road and purchase food or drinks. He stated that he would leave Searcy for the week around 8:00 a.m. and that he would return to Searcy on Saturday night. He testified that upon his return, he was required to drop off the trailer; refuel and wash the outside of the truck; turn in his paperwork; remove his personal items from the truck; clean the inside of the truck, which included sweeping and sanitizing the floors and sanitizing the bedding; and clock out. He said that Wal-Mart wanted the inside of the trucks cleaned with chemicals and the bedding sprayed because there had been a "rash of bedbugs at one time, and so they want the drivers to use Lysol on their truck, and on the floors and everything." Anderson added that he and other drivers are given a credit card by Wal-Mart for necessary purchases related to the truck, which he said includes the purchase of Lysol. Anderson explained that if the interior of the truck is not cleaned, he could be punished or even terminated. Anderson also mentioned that the truck he drove all week was not solely used by him; occasionally, other drivers would drive the truck when Anderson was off duty. After these activities were completed on Saturday evening, Anderson would drive his personal vehicle home to Arkadelphia.

Anderson also testified that he is not required by Wal-Mart to drive to Searcy on Mondays and spend the night in the truck. He said that he could have driven from Arkadelphia to Searcy early on Tuesday mornings to start the work week. However, he explained that Wal-Mart provides a courtesy to its drivers by allowing them to spend the night in a Wal-Mart truck the night before they are scheduled to start the work week. He added that he only gets paid by Wal-Mart for his time Tuesday to Saturday.

On Saturday, March 9, Anderson returned to Searcy after being on the road all week. He stated that he removed the trailer from the truck, refueled and washed the exterior of the truck, and dropped off his paperwork. He said that he also washed and vacuumed his personal vehicle. He then began removing his personal items from the truck. He said that an alarm went off in the truck, warning him that he had about five minutes before his Arkansas Department of Transportation (DOT) fourteen-hour time limit expired.[1] He stated that he knew he would not be able finish removing his personal items and cleaning the interior of the truck in time, so he clocked out. He continued to remove his personal supplies from the truck. As he was climbing out of the truck, he missed a step and fell about five feet to the ground onto his hip. At the doctor's office, he learned that his left femur was dislocated from his hip and that he had fractured his left pelvis. He had a total left hip replacement in December 2019. When he claimed that he was entitled to workers'-compensation benefits for his injuries, Wal-Mart denied the claim, contending that Anderson was not performing employment services at the time of his accident.

The ALJ found that Anderson had failed to meet his burden of proving that he was performing a specific job function at the time of his injuries. The ALJ acknowledged that Anderson was responsible for cleaning the interior of the truck but found that he had already clocked out for the day and had spent time taking care of personal matters related to his own vehicle before he clocked out. The ALJ also found that Wal-Mart allowed its drivers to sleep and store personal items in its trucks as a courtesy.

---

[1]Anderson explained that there is a DOT regulation that limits truck drivers from being clocked in and on duty more than fourteen hours at a time. He said that if he violates that regulation, he and Wal-Mart will get in trouble.

Anderson appealed the ALJ's decision to the Commission, which reversed the ALJ and found that Anderson was performing employment services at the time of his accident. Specifically, the Commission found that Anderson testified that he was required to clean the truck at the end of his work week, he was removing his personal items from the truck so he could clean the truck, and he was subject to discipline if he failed to clean the truck. The Commission also found that Anderson is entitled to reasonable and necessary medical treatment and temporary total-disability benefits from March 9, 2019, to a date yet to be determined. Wal-Mart appealed the Commission's opinion.

When reviewing a decision of the Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Trezza v. USA Truck Inc.*, 2014 Ark. App. 555, at 3, 445 S.W.3d 521, 523. This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.*, 445 S.W.3d at 523. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.*, 445 S.W.3d at 523. The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Id.*, 445 S.W.3d at 523.

A compensable injury includes an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services or results in disability or death. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an injury which was inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-

102(4)(B)(iii). The supreme court has interpreted the term "employment services" as performance of something that is generally required by an employer. *Id.*, 445 S.W.3d at 523. We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Id.*, 445 S.W.3d at 523. The test is whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id.* at 3–4, 445 S.W.3d at 523.

Wal-Mart argues that the Commission's opinion is not supported by substantial evidence because at the time of Anderson's injury, he was not performing employment services, i.e., he was not doing something that was generally required by his employer. For instance, he was not cleaning or sanitizing or sweeping the truck when his accident occurred. Rather, Wal-Mart claims that when Anderson was injured, he was engaged in a purely personal activity—removing his belongings from Wal-Mart's truck. Wal-Mart points out that it did not require Anderson to carry food, drinks, and other personal items in the truck. Rather, it allowed Anderson to load his personal items in its truck as a courtesy. Wal-Mart also asserts that Anderson's removal of his personal supplies from the truck is not necessary for his job of driving the truck.

In *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999), White was on his way to a smoke break when he attempted to step off his forklift through a door located in front of one of the veneer dryers and fell approximately two to three feet injuring his ankle. The

Commission denied White's claim, concluding that he failed to prove that he was performing employment services at the time of his accident. *White*, 339 Ark. at 477, 6 S.W.3d at 100.

The supreme court reversed, holding that substantial evidence failed to support the Commission's decision because White's unrebutted testimony was that while he was entitled to breaks, oftentimes his employer failed to provide him with a relief worker, so he was told to take his break—not in the designated break area, but in an area where he could monitor the dryers, which is where White was headed when he fell. White also testified that he was told by his supervisor to take a break whenever he got the chance and that if he was needed while on break, White would have been forced to return to his forklift immediately. *Id.* at 478–79, 6 S.W.3d at 100. Finally, the supreme court noted that while White was not loading the dryers at the time of his fall, he was, in fact, monitoring them, which was a required part of his job duties. *Id.* at 481, 6 S.W.3d at 101.

The facts in *White* are similar to those in the instant case in that at the time of their injuries, White and Anderson were clocked out and tending to personal matters that were not directly advancing the interests of their employers: White was headed for a smoke break, and Anderson was removing his personal supplies from the truck. Neither activity was required by the employees' respective employers. However, at the time of their injuries, both White and Anderson were indirectly advancing the benefit of their employers and were doing something inherently necessary for the performance of their primary job: White was headed to an area where he was required to monitor the dryers, and Anderson was removing his personal items from the truck so he could clean and sanitize it. Furthermore, these activities were required

by White's and Anderson's employers. As such, we hold that *White* is sound authority for affirming the Commission's decision in Anderson's case.

The two cases Wal-Mart cites for support are distinguishable. In *Trezza*, this court affirmed the Commission's finding that Trezza, a truck driver, was not performing employment services when he "got out" to go to the bathroom and stumbled or stepped incorrectly, which caused him to fall. *Trezza*, 2014 Ark. App. 555, at 1, 445 S.W.3d at 522. This court held that substantial evidence supported the Commission's finding because at the time of his accident, Trezza had finished working for the day; he had parked his truck at the terminal; he had clocked out; and he was on a "thirty-four-hour restart," which meant he was not going to perform any job functions for at least thirty-four hours after going off duty. *Id.* at 4–5, 445 S.W.3d at 524. This court also noted that Trezza was not taking a bathroom break so that he could return to his work duties; instead, he was off work and not required to do anything. *Id.* at 5, 445 S.W.3d at 524. While Trezza testified that he was responsible for keeping his truck secure, he was not required to sit with or sleep in his truck. *Id.*, 445 S.W.3d at 524.

The second case cited by Wal-Mart is *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark. App. 90, 989 S.W.2d 541 (1999). In *Kinnebrew*, this court affirmed the Commission's finding that Kinnebrew, a truck driver, was not performing employment services when he was off duty and slipped and fell while taking a shower at a truck stop. This court held, "Showering is not inherently necessary for the performance of the job [Kinnebrew] was hired to do." *Id.* at 92, 989 S.W.2d at 543.

*Trezza* and *Kinnebrew* have a few facts in common with the facts in the case at bar: each employee was a truck driver, each had clocked out for the day when their injuries occurred,

and each were tending to personal needs at the time of their accidents. But the critical distinction is that when Trezza and Kinnebrew fell, they were not under any job requirements at the time. Trezza was off duty for a thirty-four-hour period, and Kinnebrew had been off duty for seven hours. In contrast, when Anderson fell, he still had job duties to tend to: he was required to clean and sanitize the truck. He testified that he was required to do this, and if he did not, he was subject to discipline. He said that he was given a company credit card to purchase Lysol to clean and sanitize the interior of the truck. The only way Anderson could clean and sanitize the truck was to take his personal items out of it, which indirectly advanced Wal-Mart's interest and was inherently necessary for the performance of Anderson's primary job.

In viewing the evidence in the light most favorable to the findings of the Commission, we hold that substantial evidence supports the Commission's conclusion that Anderson was performing employment services when he fell from his truck.[2] Accordingly, we affirm.

Affirmed.

HARRISON, C.J., and BROWN, J., agree.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellant.

*Laura Beth York*, for appellee Willie Anderson.

---

[2]The Commission also found that Anderson is entitled to reasonable and necessary medical treatment and temporary total-disability benefits from March 9, 2019, to a date yet to be determined. Wal-Mart does not challenge these findings on appeal.