Beverly CLARDY *v.* MEDI-HOMES LTC SERVICES, LLC,
and
Union Pacific Insurance Company

CA 01-200                                                55 S.W.3d 791

Court of Appeals of Arkansas
Division I
Opinion delivered September 26, 2001

158

*Dean A. Garrett*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *E. Diane Graham* and *Rebecca D. Hattabaugh*, for appellees.

A NDREE LAYTON ROAF, Judge. Beverly Clardy appeals from a Workers' Compensation Commission ruling that injuries she sustained in a fall at work did not occur at a time when employment services were being performed because she had briefly walked across a driveway to speak to a co-worker while she was engaged in taking waste material to an outside storage area. The Commission consequently reversed the Administrative Law Judge's determination that Clardy had established that she sustained a compensable injury and denied benefits. The substantial-evidence standard of review requires that we affirm this case.

On July 28, 1998, Beverly Clardy, twenty-four years old and pregnant, was employed in the dietary area of Medi-Home Nursing Home. Her duties on that date included emptying waste from dirty dishes into "slop buckets" and taking the buckets to a rear outside storage area. As Clardy was returning from the storage area to retrieve a second bucket, she deviated approximately ten feet across a paved driveway adjoining a sidewalk to speak to an off-duty co-worker whose car was parked in the drive. Clardy testified that the area was slippery because mop water was routinely dumped there by employees, and that she slipped and fell down a grassy hill adjoining the driveway, fracturing her ankle. The co-worker, Jeremy Cox, testified that he was preparing to fish at a pond located behind the nursing home when he saw Clardy at the back door pushing a slop bucket, that they exchanged "hellos," and that when he looked up again Clardy had fallen.

The ALJ found that Clardy and Cox presented credible testimony and that Clardy's fall and resulting injuries occurred on the employer's premises, during her regular working hours, at a time when she was on duty and being paid, and while she was carrying out an assigned duty of transporting garbage and trash to a designated storage area. The ALJ further found that the digression of ten to twelve feet from the most direct route back to the kitchen to

speak to a co-worker was only a "*de minimus* deviation" and was not sufficient to take her outside the course and scope of her employment. The Commission reversed the ALJ, issuing majority, concurring, and dissenting opinions. The majority opinion found that Clardy had to get off the sidewalk and cross the pavement to get to the place she fell, characterizing this deviation as an "unscheduled and unauthorized break," and further stated that Clardy had "diverted from her job duties" in "social activities for [her] personal pleasure" that did not further the interests of her employer when she sustained injuries. In its opinion, the Commission allowed that "if [Clardy] had merely said, 'hello' on the way back inside," and "had not gone over to the car to chat," her fall would have been compensable. Clardy appeals from the finding that she was not performing employment services at the time of her injury and from the denial of benefits.

On review, this court will affirm if the Commission's decision is supported by substantial evidence. *Spencer v. Stone Container Corp.*, 72 Ark. App. 450, 38 S.W.3d 909 (2001). To determine if the decision is supported by substantial evidence, this Court views the evidence in the light most favorable to the Commission's findings and affirms if reasonable minds could have reached the same conclusion. *Id.* Where a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires the reviewing court to affirm the Commission if its opinion displays a substantial basis for the denial of relief. *Hislip v. Helena/West Helena Sch.*, 74 Ark. App. 395, 48 S.W.3d 566 (2001); *see also, Williams v. Arkansas Oak Flooring Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark. App. 1979). The injured party bears the burden of proof in establishing entitlement to benefits under the Workers' Compensation Act and must sustain that burden by a preponderance of the evidence. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999). The provisions of the Workers' Compensation Act were formerly construed liberally. However, Act 796 changed the former practice and mandated that the Commission and the courts construe the provisions strictly. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 42 S.W.3d 822 (2001). *See* Ark.Code Ann. § 11-9-704 (c)(3) (Repl. 1996).

In this case, the Commission considered the evidence presented in light of Arkansas Code Annotated § 11-9-102(4)(B)(iii) (Supp. 1999), which states that "compensable injury" does not include "[i]njury which was inflicted at a time when employment services were not being performed. . . ." Arkansas

Code Annotated § 11-9-102(4)(A)(I) (Supp. 1999), defines a "compensable injury" as follows:

> [a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" if it is caused by a specific incident and is identifiable by time and place of occurrence. . . .

■ Although distinguishable from the case at bar, Arkansas case law has addressed situations where both employment services and personal services were being performed concurrently, and the activity thus served a dual purpose. This Court stated that the test for determining whether an employee is acting within the course of employment as required for a compensable injury is whether the injury occurred "within time and space boundaries of employment, when the employee is carrying out the employer's purpose or advancing employer's interests directly or indirectly." *Ray v. University of Arkansas*, 66 Ark. App. 177, 179, 990 S.W.3d 558 (1999) (finding that appellant performed employment services when her employer received a benefit from the appellant's presence during her break by the requirement that she leave her break if a student needed her assistance, and she was injured when she slipped on salad dressing while reaching for a snack from the cafeteria for her own consumption) (citing *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W. 2d 956 (1997)). *See White v. Georgia Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999) (holding that the employer gleaned a benefit from the appellant remaining near his work station to monitor machines, which was a requirement of his job duties, and therefore, the appellant was performing employment services).

■ This court also has recently addressed the meaning of performing "employment services" where the employee's personal comfort was at issue. *See Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 332, 49 S.W.3d 126 (2001); *Collins v. Excel Specialty Prod.*, 74 Ark. App. 400, 49 S.W.3d 161 (2001). *See also Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1997). In *Matlock, supra,* the appellant appealed the decision of the Commission that denied benefits for injuries suffered when she fell while returning to her work station after a trip to the restroom. The Commission held that the appellant was not performing employment services when she was injured, and thus, her injury was not compensable. This court reversed and held that the Commission's finding that the appellant was not performing employment services was not supported by substantial evidence. The court stated that the

"employment services" requirement precluding worker's compensation benefits for acts performed by employees solely for their own benefit did not apply to acts of personal convenience or comfort. In explaining the personal-comfort doctrine, the court stated, "Although technically the employee's actions do not contribute directly to the employer's profits, compensation is justified under the 'personal comfort' exception on the rationale that the employer indirectly benefits in the form of better work . . . and on the theory that such a minor deviation does not take the employee out of the employment." *Matlock, supra.*

■ Whether a worker is performing employment services depends on the particular facts and circumstances of each case. In *Matlock,* this court outlined several factors to be considered in determining whether conduct falls within the meaning of "employment services." These factors include: 1) whether the accident occurs at a time, place, or under circumstances that facilitate or advance the employer's interests; 2) whether the accident occurs when the employee is engaged in activity necessarily required in order to perform work; 3) whether the activity engaged in when the accident occurs is an unexpected part of the employment; 4) whether the activity constitutes an interruption or departure, known by or permitted by the employer, either temporally or spatially from work activities; 5) whether the employee is compensated during the time that the activity occurs; and 6) whether the employer expects the worker to stop or return from permitted non-work activity in order to advance some employment objective.

■ We are not unmindful of the fact that this court, in dicta, has stated that the "personal comfort" doctrine has been abrogated by the passage of Act 796 of 1993 and the drastic changes to our workers' compensation law wrought by this legislation. *See Beaver v. Benton County,* 66 Ark. App. 153, 991 S.W.2d 618 (1999). However, in *Matlock, supra,* the court pointed this out and stated, "We serve notice that our statement in *Beaver v. Benton County,* 66 Ark. App. 153, 991 S.W.2d 618 (1999), that 'the personal-comfort doctrine is no longer the law,' was *orbiter dictum.*" In any event, according to *Larson's,* the "personal comfort" doctrine extends to various life necessities such as satisfying thirst, eating, discharging bodily wastes, protecting oneself from excessive heat or cold, or cleansing oneself. 2 Arthur Larson, *Larson's Workers' Compensation Law,* § 21.10 (2000); *see also Matlock v. Arkansas Blue Cross Blue Shield,* 74 Ark. App. 322, 329, 49 S.W.3d. 126 (2001). Clearly, Clardy's diversion to speak to a co-worker would fail to come within this doctrine. Moreover, even if we were to apply the *Matlock* factors to the

facts in this case, the Commission's decision must still be affirmed. The activity at issue is not the transport of waste buckets, but Clardy's diversion to talk to a co-worker. Although we may not agree with the Commission's characterization of the activity as an "unscheduled and unauthorized break," Clardy testified that she was not on a scheduled break and had used all of her allotted breaks for the day. Even so, unless her employer was a "Simon Legree,"[1] there is no reason for the Commission to speculate that such a minor diversion would have been forbidden to the nursing home's employees. However, there was no further evidence presented by Clardy concerning the nature of her intended conversation with Cox, how this activity might have in any respect served the employer's interests, or was necessary to the performance of any of Clardy's duties, and the burden of proving entitlement to benefits ultimately rested upon her shoulders.

In sum, we cannot say that Clardy's activity at the time of her fall comes within either the "personal comfort" or "dual purpose" doctrine, and we can find no authority under our post-1993 workers' compensation law for carving out a "*de minimus*" exception to the requirement that the employee be engaged in the performance of employment services at the time an injury occurs.[2] Given the evidence in this case, we cannot say the Commission's finding that Clardy's digression across the driveway was purely personal in nature, or its ruling that Clardy was not performing employment services at the precise time she fell are not supported by substantial evidence.

Affirmed.

HART, J., agrees.

PITTMAN, J., concurs in the result.

---

[1] Harriet Beecher Stowe, *Uncle Tom's Cabin or Life Among the Lowly* (1852).

[2] *But see* 1 Arthur Larson, *Larson's Workers' Compensation Law* § 17.04 (discussing triangular deviation); 1 Arthur Larson, *Larson's Workers' Compensation Law* § 17.06[3] (discussing size of deviation).