Jimmy LINTON *v.*
ARKANSAS DEPARTMENT of CORRECTIONS
and Public Employee Claims Division

CA 03-1195 190 S.W.3d 275

Court of Appeals of Arkansas
Division II
Opinion delivered September 1, 2004

264

R. *Theodore Stricker*, for appellant.

*Richard S. Smith*, for appellees.

ANDREE LAYTON ROAF, Judge. Appellant Jimmy Linton appeals the Workers' Compensation Commission's ("Commission") decision affirming and adopting the Administrative Law Judge's ("ALJ") findings and denying him compensation on the basis that he failed to prove by a preponderance of the evidence that he sustained an injury in the course of and arising out of his employment with appellee Arkansas Department of Correction ("ADC"). On appeal, Linton argues that the Commission erred in denying him compensation where his injury falls within an exception to the "going and coming rule," because he was on a special errand for his employer, he was paid for his travel time, and he was a law- enforcement officer. We affirm.

Linton had been employed by the ADC as a correctional officer since 1988. On January 6, 2000, he was told by his supervisor, Joe Porchia, to attend a required staff meeting at 6:30 a.m. the next morning, January 7, which was Linton's day off. Linton was being promoted to the position of captain, and this announcement was to be made at the meeting. Linton testified that he was requested to dress in his uniform. While driving from his

home to his normal place of employment at the Mississippi County Work Release Center on the morning of January 7 to attend the meeting, Linton was involved in a one-vehicle accident at approximately 6:00 a.m. and sustained serious injuries. Linton is now paralyzed from the waist down and is confined to a wheelchair. Linton filed a claim for workers' compensation benefits, which was controverted by the ADC. The ADC argued that Linton was not performing employment services within the meaning of the law at the time of the accident.

At the hearing, Linton testified that his normal work hours were 5:45 a.m. until 6:00 p.m. when he worked the day shift. He stated that he was on call at all times. Linton further testified that he understood that if he was called in on a day off to attend a meeting, such as on January 7, 2000, he would be paid from the time he left home until he arrived back home. He elaborated that if the meeting lasted for one hour, he would put down two hours on his time sheet so that he would be compensated for his travel time. Linton verified that he did not specify this as travel time and that he was not reimbursed for travel. He stated that this was the policy and that his supervisor, Mr. Porchia, had advised him to add the extra hour to the time sheet. Linton testified that he considered himself to be a law-enforcement officer and stated that he was certified as such in 1978, although he admitted that he was not currently certified.

Walter Todd and Kennett Bassett, retired employees of the ADC, testified that they were paid for their travel time when they attended a meeting on their day off and that they were told by their supervisors to include their travel time on their time sheets. Todd, who had been in charge of time sheets, testified that this was the written policy in the ADC manual.

Porchia testified that Linton was told to be at the staff meeting at 6:30 a.m. on January 7, 2000, for the purpose of announcing his promotion to captain, which would not take effect until the following Monday, January 10. According to Porchia, Linton was a correctional officer and not a law-enforcement officer. Porchia testified that Linton was not authorized to stop speeders on his way to work or to investigate accidents. Although the correctional officers could occasionally be called in the event of a natural disaster, Porchia stated that this was only to supervise a team of inmates providing assistance.

Porchia also testified that employees are not paid for travel time when they come to meetings on their day off and that he was

not aware employees were adding an extra hour to their time sheet on these occasions. The ADC's policy manual was introduced into evidence, which showed that travel during normal working hours on regularly scheduled working days is work time, as well as travel performed on non-work days during the same hours. However, employees are not compensated for their travel outside their normal working hours on non-work days. Porchia testified that although Linton had often worked from 5:45 a.m. until 6:00 p.m. when on the day shift, on the Wednesday and Thursday before the accident, his schedule had changed to eight-hour shifts, from 7:00 a.m. until 4:00 or 4:30 p.m. Porchia stated that these were the hours for an administrative position and that this would have been Linton's new schedule as captain.

Following the evidence, the ALJ found that Linton had failed to prove by a preponderance of the evidence that he sustained a compensable injury in the course of and arising out of his employment with the ADC. The Commission affirmed and adopted the findings of the ALJ, and Linton now appeals from this decision.

Linton argues on appeal that his claim is compensable and arose out of and in the course of his employment because it falls within the following exceptions to the "going and coming rule:" (1) he was on a special errand for his employer; (2) he was paid for his travel time; (3) he was a law-enforcement officer.

■■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003). This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Mfg. v. Baker,*

337 Ark. 94, 989 S.W.2d 151 (1999). Where a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Clardy v. Medi-Homes LTC Serv. LLC*, 75 Ark. App. 156, 55 S.W.3d 791 (2001).

A "compensable injury" is defined as an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A) (Supp. 2003). Act 796 of 1993 redefined the term "compensable injury" to exclude an injury that was inflicted upon the employee at a time when employment services were not being performed. *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1997); Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2003). The same test is used to determine whether an employee was acting within the course of employment at the time of the injury as is used when determining whether an employee was performing employment services. *Privett v. Excel Specialty Prods.*, 76 Ark. App. 527, 69 S.W.3d 445 (2002). The test is whether the injury occurred within the time and space boundaries of the employment while the employee was carrying out the employer's purpose or advancing the employer's interests directly or indirectly. *Id.*

An employee is generally not said to be acting within the course of employment when he is traveling to or from the workplace, and thus, the "going and coming rule" ordinarily precludes compensation for injuries sustained while an employee is going to or returning from his place of employment. *Campbell v. Randal Tyler Ford Mercury, Inc.*, 70 Ark. App. 35, 13 S.W.3d 916 (2000); *City of Sherwood v. Lowe*, 4 Ark. App. 161, 628 S.W.2d 610 (1982). The reason for this general rule is that all persons, including employees, are subject to the recognized hazards of travel to and from work in a vehicle. *City of Sherwood, supra*. However, there are exceptions to the "going and coming rule" where the journey itself is part of the employment service, such as traveling men on a business trip and employees who must travel from job site to job site. *Campbell, supra*. The court in *Campbell* also noted that whether

an employer requires an employee to do something has been dispositive of whether that activity constituted employment services. *Id.*

Linton first argues that he was within the course of his employment while driving to his meeting on his day off because he was performing a "special errand" for his employer by attending the required meeting. The "special errand" exception has previously been recognized by our appellate courts in *Brooks v. Wage,* 242 Ark. 486, 414 S.W.2d 100 (1967), and *Lepard v. West Memphis Machine & Welding,* 51 Ark. App. 53, 908 S.W.2d 666 (1995). Linton also cites the decision in *Frank Lyon Co. v. Oats,* 225 Ark. 682, 284 S.W.2d 637 (1955), as support for his argument. In that case, the claimant was awarded compensation for his injuries sustained in an automobile accident that occurred when the claimant was returning from an out-of-town sales meeting required by his employer. *Id.* However, that case awarded compensation based on the fact that the claimant was a traveling salesman and did not discuss the "special errand" exception.

■ As is argued by the ADC, it is not clear that the "special errand" exception is still valid after the passage of Act 796 of 1993, which revised the definition of a "compensable injury" and required that the workers' compensation statutes now be strictly construed. For example, in *Hightower v. Newark Public School System,* 57 Ark. App. 159, 943 S.W.2d 608 (1997), in which the claimant was a teacher who was injured when she slipped on ice in the employer's parking lot, the claimant was denied benefits on the basis that "merely walking to and from one's car, even on the employer's premises," does not qualify as performing employment services. *Id.* at 164. The court stated that the premises exception to the "going and coming rule" would have applied in that situation under prior law, but that since the 1993 amendment to the workers' compensation statutes, this exception has been eliminated. *Id.*

■ There are no Arkansas cases expressly applying the "special errand" exception to injuries sustained after 1993, although in *Fisher v. Poole Truck Line,* 57 Ark. App. 268, 944 S.W.2d 853 (1997), the claimant was awarded benefits for injuries sustained in a car accident while returning to his employer's premises after retaking a required urine test. This case can be distinguished from *Fisher,* as the claimant in that case had reported to work in order to obtain a work assignment when he was informed that he

had to retake the urine test before receiving the assignment. After retaking the test, the claimant was delivering the results to his employer when he was involved in the car accident. In this case, Linton was driving to work at his normal place of employment when he was involved in the accident. There was testimony that ADC employees were often required to attend these staff meetings, and Linton was not performing any sort of special errand or other service for his employer other than reporting to the meeting.

■ ■ Linton argues that because he was required to attend the staff meeting and because his attendance at the meeting benefitted his employer, he was performing employment services at the time of his accident. However, it is essential to every employer that its employees come to work, and merely traveling to and from the workplace is not an activity covered under our workers' compensation statutes. Linton also contends that traveling to the meeting on his day off distinguishes this situation from other cases in which compensation was denied and asserts that this extra day of travel increased the "quantity" if not the "quality" of the risk. Linton does not cite to any controlling authority for this proposition, and we do not find this argument to be persuasive. Although he cites cases from other jurisdictions that have awarded benefits to employees who were performing some employment service on their day off, it appears that none of these jurisdictions have a similar statutory requirement that employment services are being performed at the time of the injury. *See Allen v. Board of Selectmen of Weymouth*, 15 Mass. App. Ct. 1009, 448 N.E.2d 782 (1983); *Indiana Toll Road Comm. v. Bartusch*, 135 Ind. App. 123, 184 N.E.2d 34 (1962); *Benjamin H. Sanborn Co. v. Industrial Comm.*, 405 Ill. 50, 89 N.E.2d 804 (1950). It is also not clear that these jurisdictions require strict construction of their workers' compensation statutes, as in this state.

■ In addition, none of these cases involve the same situation as in the present case, where an employee is driving to a meeting held at his normal place of employment on his day off. In fact, in *McDaniel v. Bus Terminal Restaurant Management Corp.*, 271 S.C. 299, 247 S.E.2d 321 (1978), the claimant was denied compensation under facts very similar to this case. The claimant was attending a required meeting at her normal place of employment, and she was involved in a car accident on the way home from the meeting. *Id.* The court held that the claimant was not on a "special

errand" for her employer and that her injuries did not arise out of or in the course of her employment. *Id.* In sum, the Commission did not err in denying compensation to Linton on this basis.

■ ■ Linton next argues that he was to be paid for his travel time to and from the meeting, bringing his activities within the course of his employment. While the payment of compensation is not necessarily conclusive to the issue of whether employment services are being performed, it is a factor to be considered. *See Olsten Kimberly Quality Care v. Pettey, supra.* However, in this case, there was substantial evidence from which the Commission could conclude that Linton was not being paid for his travel time to and from the January 7 meeting. Linton's supervisor, Porchia, testified that the employees were not compensated for travel time, and the ADC policy manual introduced into evidence stated that employees were only compensated for travel on their days off when the travel occurred during their normal hours of employment. Although Linton had worked from 5:45 a.m. until 6:00 p.m. on previous occasions, Porchia testified that on the Wednesday and Thursday before the accident, Linton was assigned to the administrative shift, from 7:00 a.m. until 4:00 or 4:30 p.m., and that this was to be Linton's new shift in his position of captain. The meeting on January 7 started at 6:30 a.m., and Linton's accident occurred just after 6:00 a.m. Thus, there was substantial evidence to support the ALJ's finding, which was adopted by the Commission, that Linton was not traveling during his normal work hours at the time of the accident. Although Linton and two other retired employees testified that they were normally compensated for travel time by putting an extra hour on their time sheet, it was for the Commission to resolve this conflicting evidence and to weigh the credibility of the witnesses. *Searcy Indus. Laundry, Inc. v. Ferren, supra.*

■ In his final argument, Linton contends that his status as a law-enforcement officer excepts his activities from the "going and coming" rule and brings him within the course of his employment. As support for his argument, Linton cites *City of Sherwood v. Lowe, supra,* in which a police officer, on his way to work while wearing his uniform and riding his personal motorcycle equipped with police blue lights, was killed in a car accident and awarded compensation. In that case, the court found that there was an exception to the "going and coming" rule for police officers, who

are on duty twenty-four hours a day and may at any moment be called into service. *Id.* The court stated that the City of Sherwood derived a benefit from the claimant's presence on city streets in his uniform and operating a police-equipped·vehicle. *Id.*

██ ██ The present case is clearly distinguishable. Not only was Linton in his personal vehicle at the time of the accident, Porchia testified that Linton was not considered to be a law-enforcement officer and that, as a correctional officer, Linton did not have authority to stop speeders or investigate accidents. While Linton was on duty at all times, this was only in the event he was called in by the ADC because of some problem at the correctional facility. Although Linton testified that he had previously been certified as a law-enforcement officer, he admitted that he had not kept up his certification. Thus, the law-enforcement exception to the "going and coming" rule does not apply in this case, and the Commission's decision denying Linton compensation on the basis that he did not prove that he sustained a compensable injury in the course of and arising out of his employment is supported by substantial evidence. We affirm.

Affirmed.

VAUGHT and BAKER, JJ., agree.