Ricky WALLACE *v.* WEST FRASER SOUTH, INC.
and American Manufacturers Mutual Insurance Company

CA 03-1335                                         203 S.W.3d 646

Court of Appeals of Arkansas
Opinion delivered February 16, 2005

[Rehearing denied April 6, 2005.*]

*Billy Hubbell*, for appellant.

*Michael Mayton* and *David C. Jones*, for appellees.

KAREN R. BAKER, Judge. Appellant, Ricky Wallace, appeals the denial of his workers' compensation claim for an injury he sustained to his knee. The Administrative Law Judge (ALJ) found that appellant failed to prove that he was performing employment-related services or was engaged in the primary activity that he was hired to perform at the time of his slip and fall. In a decision filed September 9, 2003, the Workers' Compensation Commission (Commission) adopted and affirmed the opinion of the ALJ and denied the claim. Appellant raises one point on appeal, contending that the Commission erred in finding that he failed to prove by a preponderance of the evidence that he was performing employment services at the time of his injury. We agree that the Commission erred, and we reverse and remand for an award of benefits.

---

* PITTMAN, C.J., GLADWIN, and BIRD, JJ., would grant rehearing.

Here, appellant was employed by appellee, West Fraser South, Inc., as a forklift operator at a sawmill in Huttig, Arkansas. His primary responsibility was to pick up lumber from the yard with a forklift and load it on a conveyor chain for the "green stacker" to stack. It is undisputed that on February 5, 2002, appellant was attempting to cross a ditch by way of a 2' x 10' muddy board that was stretched across the ditch to prevent workers from having to get into the mud. Each end of the board was on a block of concrete. When he stepped onto the board, the board slipped off the concrete block causing him to fall and twist his knee.

The evidence introduced at the hearing included appellant's testimony as well as the transcript of a tape-recorded statement he had made to an insurance claims adjuster on February 13, 2002. In the recorded statement, appellant said that he was injured while "coming off a break." The recording included the following:

> Q: Okay, can you tell me what happened that day and what you were doing?
>
> A: I stepped on a board and the board buried in the mud and I fell sideways and twisted my knee.
>
> Q: And was this board . . . I don't know exactly what you do. What's your job title?
>
> A: I'm a forklift operator.
>
> Q: Okay. Were you on a break or were you going to get on the forklift.
>
> A: I was fixing … I was walking back over to get back on the forklift.
>
> Q: And coming from where?
>
> A: I went over there to talk to another guy that … I was on … I was coming off a break and I was walking back across and I stepped off of some concrete onto a place where we had been driving a forklift, and stepped on a board and it buried down in the mud and I spun and fell sideways and twisted my knee.
>
> Q: Okay were you coming off of a break or the other guy was coming off a break?

A: I was coming off break.

Q: Does your job consist of just driving the forklift?

A: Yes, ma'am.

Q: So you actually hadn't got back to your site to work? Correct?

A: No I hadn't. I was within ten feet of my site of work.

. . . .

Q: Okay. Okay, now let me see. You were on break, coming back from break, ah, about ten feet from your work site which is the forklift, stepped on a board that buried down in the mud that caused you to fall over onto your right side.

A: Yes ma'am.

Q: Landed flat on your right side ah, your knee twisted and it was an injury to your right knee. Correct?

A: Yes ma'am.

In appellant's testimony at the hearing, he testified that he had returned from a scheduled 2:30 p.m. to 2:45 p.m. daily break (for which he was not required to clock out) and resumed working on the forklift. Within a few moments, the stacker unexpectedly broke down. Appellant went over to inquire of a co-worker how long the stacker would be down so he would know if he had time to refuel the forklift for the night-shift operator before his shift ended. The co-worker informed him that the stacker was already repaired. As appellant was returning to the forklift, he fell. He testified that he checked his watch the moment he fell as he knew he would have to know the time when he reported the incident, and it was approximately 3:05 p.m.

Adopting the opinion of the ALJ, the Commission found that appellant's recorded statement was more credible than his testimony at the hearing and concluded that appellant was not performing employment services at the time of the knee injury and denied benefits. This appeal followed.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.*

Arkansas Code Annotated section 11-9-102(4)(A)(I) (Supp. 2001) defines "compensable injury" as "an accidental injury causing internal or external harm . . . arising out of and in the course of employment. . . ." Employment services are performed when the employee does something that is generally required by his or her employer. *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002); *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Collins, supra; Pifer, supra.* The test is whether the injury occurred "within the time and space boundaries of employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interests directly or indirectly." *Collins, supra; Pifer, supra.*

Here, appellant asserts that the Commission erred in finding that he failed to prove by a preponderance of the evidence that he was performing employment services at the time of his injury. Our supreme court in *Collins* and *Pifer* directed this court to focus our attention on what appellant was doing at the time of the injury. As stated above, the simple, straightforward test provides that an injury is compensable when it occurs "within the time and space boundaries of the employment, when the employee is carrying out the employer's purpose or advancing the employer's interest *directly or indirectly.*" *Collins*, 347 Ark. at 817, 69 S.W.3d at 18; *Pifer*, 347 Ark. at 857, 69 S.W.3d at 4. (Emphasis added.) "[T]he critical issue is whether the employer's interests were being advanced either directly or indirectly by the claimant at the time of the

injury." *Collins*, 347 Ark. at 818, 69 S.W.3d at 19; *Pifer*, 347 Ark. at 858, 69 S.W.3d at 5.[1]

█ The ALJ and the Commission concluded that appellant's injury was not compensable because he was "coming off break" at the time of the injury. However, it is the activity occurring at the time of the injury, not the activity that preceeded it, that is relevant to the question of whether appellant was performing employment services. In *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002), this court held that an employee injured when she returned to her locker to secure her personal items before returning to work after a break was carrying out Wal-Mart's purpose or advancing Wal-Mart's interests. Following the standard set out by our supreme court in *Collins* and *Pifer*, appellant's injury arose within the course of his employment.

At the time his injury occurred, appellant was crossing a board, placed across the ditch for that purpose, in order to return to his forklift and continue his workday. No further inquiry is necessary. Although we defer to the Commission's factual finding that appellant's recorded statement was more credible than his testimony at the hearing, and therefore, appellant was "coming off break" when the injury occurred, this fact does not determine compensability. We hold that appellant's crossing the board in order to return to work was an activity that directly advanced his employer's interests and therefore constituted employment services. Because appellant was performing employment services at the time of his injury, we reverse and remand for an award of benefits.

Reversed and remanded.

HART, ROBBINS, CRABTREE, and ROAF, JJ., agree.

PITTMAN, C.J., GLADWIN, BIRD and VAUGHT, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. The Commission found that the appellant failed to prove he was performing employment services when he was injured. I agree with the conclu-

---

[1] In both *Collins* and *Pifer*, the supreme court specifically overruled "all prior decisions by the Arkansas Court of Appeals" to the extent that they were inconsistent with the holdings in *Collins* and *Pifer*. *Collins*, 347 Ark. at 819, 69 S.W.3d at 20; *Pifer*, 347 Ark. at 859, 69 S.W.3d at 5.

sion stated in Judge Bird's dissent that this finding is supported by the evidence. Where a claim is denied because the claimant has failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Williams v. Arkansas Oak Flooring Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark. App. 1979). The Commission here denied relief because appellant gave two conflicting accounts of what he was doing when the injury occurred, leading the Commission to reject appellant's testimony at the hearing that the accident took place after he had already returned to work. Appellant, as claimant, had the burden of proving entitlement to benefits under the Workers' Compensation Act by a preponderance of the evidence. *Clardy v. Medi-Homes LTC Services LLC*, 75 Ark. App. 156, 55 S.W.3d 791 (2001). Given that the Commission chose to believe the version of events in appellant's recorded statement indicating that appellant had not yet returned to work from his break when the injury occurred, and that appellant failed to prove what he was doing during the break from which he was returning, I agree that the Commission's opinion displays a substantial basis for the denial of relief.

I write separately because I disagree with the interpretation set out in Judge Bird's dissent of our supreme court's decision in *Collins v. Excel Speciality Products*, 347 Ark. 811, 69 S.W.3d 14 (2002). There the court held that:

> We note that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment. As the court of appeals reasoned in *Matlock v. Blue Cross, supra*:
>
>> Restroom facilities are provided in work settings because eliminating bodily toxins and wastes are natural and ordinary biological processes. Employers provide restroom facilities for the benefit of their customers, to be sure. But they also provide those facilities to accommodate their workers so as to avoid the work interruptions and delays that would certainly occur if workers were forced to leave the employment premises in order to find a public restroom at some distance from the work, their supervisors, and customers.

*Matlock v. Blue Cross Blue Shield*, 74 Ark. App. at 341–42, 49 S.W.3d at 139. Like the appellant in *Matlock*, Ms. Collins had gone to a restroom provided by her employer when the accident occurred that resulted in her injuries. Her conduct was entirely consistent with the employer's interest in advancing the work. Everything in the record before us indicates that appellant was engaged in conduct permitted by the employer, if not specifically authorized by the employer, and that the employer provided restroom facilities on its premises.

*Collins v. Excel Specialty Products*, 347 Ark. 811, 818–19, 69 S.W.3d 14, 19–20 (2002).

In my view, the above-quoted language does more than simply establish a "bathroom exception." I believe that the true import of *Collins* is that an employee activity, although personal, will be viewed as compensable if it is a necessary function and it directly or indirectly advances the interests of the employer.[1] It was therefore incumbent on the claimant in this case to prove not merely that he was injured while returning from a break, but also that he was returning from a break involving a necessary function that advanced the interests of the employer.

I would affirm.

SAM BIRD, Judge, dissenting. I write separately to explain why I dissent from the majority's reversal of the Commission's decision denying this claim.

At the hearing before the administrative law judge, appellant Ricky Wallace asserted that the injury occurred after he had returned from his afternoon break on his job as a forklift operator for appellee West Fraser South, Inc. The company and its insurance company contended that the injury was not compensable because he was injured during a work break.

An injury is not compensable if it was inflicted upon the employee at a time when employment services were not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2003). In determining the sufficiency of the evidence, we view the evidence

---

[1] The possible examples of such circumstances are legion. Certainly, an outdoor worker's break to drink water on a hot summer day is as necessary to the worker and beneficial to the employer as a bathroom break would be.

and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we will affirm if those findings are supported by substantial evidence. *Winslow v. D & B Mech. Contr.*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Where the Commission's denial of relief is based on the claimant's failure to prove entitlement to benefits by a preponderance of the evidence, the substantial evidence standard of review requires affirmance if the Commission's opinion displays a substantial basis for the denial of the claim. *Id.*

In his testimony at the hearing, appellant stated that contractors at his workplace "laid a board where they could walk across there and go to the bathroom and stuff without having to wade mud." Appellant further testified that the green stacker broke down after he returned from his break, when he was back on his forklift and had put more lumber on the chain. He stated:

> The green stacker broke down and I stepped off of the lift to see how long it was going to be down. . . . It broke down and I got off to see how long it was going to be down where I would know if I would have enough time to go fuel the lift and come back. If the machine was down, I was going to go ahead and fuel it up for the nightshift operator so he would not have to drive it up there and fuel it up.
>
> When I talked to the operator, they had got it ready and were fixing to start it. I was headed back to my lift when I slipped and fell.

In rebuttal to appellant's hearing testimony, appellees introduced into evidence a tape-recorded statement that appellant had given to a claims investigator only a few days after his injury. Appellant's tape-recorded account of the accident makes no mention of an equipment breakdown, or of appellant's inquiry about the time the repairs to the green stacker would take and whether he would have time to refuel his lift. In explaining the inconsistency between the tape-recorded statement and his hearing testimony, appellant testified at the hearing that the recorded statement was made at 9:00 a.m two days after the accident, when the claim adjuster's phone call woke him up. Appellant now argues that the Commission was wrong to find his recorded statement to the claims adjuster more credible than his hearing testimony.

The Commission's decision includes the following explanation of this determination:

> [T]he claimant's statement of events leading up to his accident as provided in the recorded statement are at least as persuasive, if not more so that the claimant's hearing testimony. Claimant's recorded statement was provided within just one week of the accident when the events of the accident were freshest in his memory. Claimant stated at that time that he was just coming off of a break when the accident occurred. At no time did the claimant mention that he had already returned to work from his break and was just checking on the timing for the repairs of the unexpected breakdown. With the breakdown being an unusual and unexpected event, it is unlikely that the claimant would have forgotten or overlooked this detail when he provided his recorded statement. Moreover, given the fact that the claimant's recorded statement is inconsistent with his hearing testimony, the lack of any corroborating testimony or evidence regarding the green stacker being down and claimant' s inquiry into how long it was going to be down diminishes the weight of claimant's hearing testimony.

It is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Cooper Tire & Rubber Co. v. Angell*, 75 Ark. App. 325, 58 S.W.3d 396 (2001). Unless we conclude that reasonable minds could not reach the conclusion reached by the Commission, we are required by our standard of appellate review to defer to the Commission's determination that appellant's tape-recorded statement was more credible than his testimony regarding the occurrence of his injury. *Arkansas Elec. Coop. v. Ramsey*, 87 Ark. App. 254, 190 S.W.3d 287 (2004); *Privett v. Excel Spec. Prods.*, 76 Ark. App. 527, 69 S.W.3d 445 (2002). While acknowledging this standard, the majority, nonetheless, ignores it, disregards the Commission's conclusion, and concludes that appellant was injured after he had returned from his break.

Here, it was up to the Commission to resolve the inconsistencies between appellant's hearing testimony, which revealed a legitimate work-related reason for his being off his forklift and walking across the board at the time of his fall, and appellant's tape-recorded statement, in which appellant stated that he was returning from his break at the time of his fall. Significantly, in contradiction to his hearing testimony, which the Commission found not to be credible, appellant's tape-recorded statement did not say that he had already returned from his break and resumed his

work at the time of his injury. In fact, in appellant's tape-recorded statement he clearly said that he fell from the board as he was in the process of returning from his scheduled fifteen-minute break, but before he reached his work station.

While observing that appellant's injury would have been compensable if it had occurred as described in his hearing testimony, the Commission said that it attached little weight to appellant's hearing testimony, noting that in appellant's recorded statement, which was provided within a week of the accident, appellant stated only that he was just coming off a break when the accident occurred. The Commission viewed this statement as "at least as persuasive, if not more so" than his hearing testimony. The Commission concluded that appellant had failed to prove that he was performing employment-related services or was engaged in the primary activity that he was hired to perform when he was returning from his break and fell.

In addition to challenging the Commission's determination of credibility, appellant cites the following cases that hold a claim to be compensable because the claimant was performing employment services at the time of injury. I believe that the cases upon which appellant relies are distinguishable from the present case.

In *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999), a claim was held to be compensable when an employee injured himself on a smoke break that he had to take in an area where he could monitor the dryers, since there was no relief worker available to do the monitoring. Unlike the claimant in *White*, appellant here offered no evidence that he was required to perform any direct or indirect services for his employer during his break.

In *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999), a claim was held to be compensable where the employee, a food-service worker on paid break, was required to interrupt her break to be available to assist students. Unlike the claimant in *Ray*, appellant here offered no proof that he was required during his break to perform any services that were generally required by his employer.

In *Crossett Sch. Dist. v. Fulton*, 65 Ark. App. 63, 984 S.W.2d 833 (1999), a claim was held to be compensable when a resource teacher who worked on three different campuses, after being given duties for the day by the librarian, left the school building with permission of the principal to retrieve from her car the glasses that

she required to read fine-print instructions for her assigned project. She was injured when she slipped on ice in the parking lot. We held that retrieving the glasses required to do her job constituted the performance of employment services. Unlike the claimant in *Fulton*, appellant here offered no proof that at the time of his fall, he was performing any act required of him by his employer.

In *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998), a claim was held to be compensable where a claimant, before clocking in, entered a building to disarm an alarm, as it was his duty to do. As it turned out, the alarm had already been disarmed. We held that in attempting to perform his duty to disarm the alarm, claimant was carrying out the employer's purpose and advancing his employer's interests, which therefore constituted performance of employment services. Unlike the claimant in *Shults*, appellant here offered no proof that at the time of his injury he was performing any act that was carrying out the employer's purpose or advancing his employer's interests.

In *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002), the supreme court held compensable an injury that occurred when an employee left a meat-cutting conveyor line to go to the bathroom, as employees had standing permission from their employer to do, and she slipped and fell down on the way there. The supreme court said:

> We note that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment.

*Id.* at 818, 69 S.W.3d at 19; *see also Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002) (noting that the activity of seeking toilet facilities, although personal in nature, has been generally recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while a claimant is engaged in relieving himself or herself, arises within the course of employment).

*Collins* is expressly limited to injuries that occur when an employee leaves his or her work station for the purpose of going to the bathroom, relieves himself or herself, and returns to the work station. Although the appellant here testified that he slipped on a board that had been placed by contractors over a ditch so that they

could walk across it "to go to the bathroom and stuff," he did not testify that at the time of his injury, his purpose in walking across the board was to go to or come from the bathroom. He did not mention in his testimony that he had gone to the bathroom, either on his fifteen-minute break, or thereafter, when he now says he was injured.

In *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002), we held compensable an injury that occurred when an employee was hit in the back by a heavy-laden cart being pushed by another employee. The circumstances were that the claimant, who was employed as a cashier, was not permitted under Wal-Mart's employee handbook, for theft prevention purposes, to have any personal items at the cashier station, and all personal items were to be kept in the employee locker provided by Wal-Mart. At the time for the claimant's regular fifteen-minute break, she clocked out and went to her locker to get cigarettes, lighter, and soda money, and proceeded to the break room. After her break, she returned to her locker to secure her personal items, as required, before returning to her cashier's station. As she squatted down to do so, she was hit by the cart; she immediately reported the incident. In affirming the Commission, we held that under the facts presented, reasonable minds could clearly find that the injury occurred within the time and space bounds of the employee's employment, while the claimant was carrying out Wal-Mart's purpose or advancing Wal-Mart's interests. Here, unlike in *Sands*, appellant offered no evidence that when walking across the board, he was doing anything that he was required by his employer's handbook to do or that he was otherwise committing any act that carried out his employer's purpose or advanced its interests.

Although the basis of the majority's decision is not entirely clear, it is apparently the position of the majority that under *Collins v. Excel Spec. Prods.*, *supra*, and *Pifer v. Single Source Transp.*, *supra*, it is immaterial whether appellant was injured while on scheduled break or returning from it, so long as the injury occurred while appellant was "within the time and space boundaries of employment, when the employee [was] carrying out the employer's purpose and advancing the employer's interests directly or indirectly." I do not believe that either *Collins* or *Pifer* supports the majority's position. Both of those cases involved employees who were injured while either going to or returning from the bathroom. In *Pifer*, the supreme court said that "the activity of seeking toilet facilities, although personal in nature, has been generally

recognized as a necessity such that accidents occurring while an employee is on the way to or from toilet facilities, or while he or she is engaged in relieving himself or herself, arise within the course of employment." 347 Ark. at 858, 69 S.W.3d at 5. The supreme court went on to hold that "Mr. Pifer's restroom break was a necessary function and directly or indirectly advanced the interests of his employer." *Id.* at 859, 69 S.W.3d at 5. As already discussed, there is no evidence that, at the time of appellant's injury, he was going to or coming from the bathroom.

Finally, I do not believe that appellant made the argument to the Commission, nor does he make the argument on appeal, that the majority now uses as its basis for holding appellant's injury to be compensable. As evidenced by his testimony, the only basis for appellant's compensability argument to the Commission was that he was injured at approximately 3:05 p.m., some twenty minutes after his return from break. It is well settled that we will not consider arguments advanced for the first time on appeal. *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998). Nor does appellant advance the majority's position on appeal. Except for his citation to the cases discussed herein, appellant's argument consists of one short paragraph and a conclusion reiterating his position that because he wasn't injured until 3:05 p.m., he was performing employment services. In the third and final sentence of his conclusion, he suggests for the first time that the Commission should be reversed "because even if he was on break, he was within the time and space boundaries of his employment and was advancing his employer[']s interests." Because he cites no authority and makes no persuasive argument in support of this position, we should reject this argument. *Matthews v. Jefferson Hosp. Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000).

In light of the Commission's determination of the weight and credibility of the evidence, and viewing the facts in the light most favorable to the Commission's findings, I would affirm the Commission's finding that appellant failed to prove that he was performing employment-related services when he was returning from his break and fell. Therefore, I would hold that the Commission's decision displays a substantial basis for the denial of this claim.

GLADWIN and VAUGHT, JJ., join.