## TEXARKANA SCHOOL DISTRICT *v.*
## Ronnie R. CONNER

CA 06-1211                                      264 S.W.3d 579

Court of Appeals of Arkansas
Opinion delivered October 3, 2007

[Rehearing denied October 31, 2007.*]

---

* GRIFFEN and VAUGHT, JJ., would grant rehearing.

*Betty J. Hardy*, for appellant.

*Moore & Giles, LLP,* by: *Gregory R. Giles,* for appellee.

D.P. MARSHALL JR., Judge. A gate fell on Ronnie Conner, a custodian for the Texarkana School District, and broke his leg in two places. He sought medical and temporary total disability benefits. The Administrative Law Judge found that Conner failed to prove by a preponderance of the evidence that he sustained a compensable injury because, at the time of his injury, he was not providing employment services to the District. The Workers' Compensation Commission reversed the ALJ's decision, and the District appeals.

## I.

Conner has worked as a custodian for the District for more than twenty-five years. His primary duties at Texarkana High School included emptying trash cans, cleaning bathrooms, and cleaning the cafeteria. As part of his work, Conner carried a walkie-talkie and keys to all the locks at the school, including the locks on the gates outside the school.

Conner generally worked from 7:00 a.m. to 4:00 p.m. and took a lunch break from 11:30 a.m. to 12:30 p.m. He was not required to stay on campus during his lunch hour. But if he did, Conner generally ate lunch in the cafeteria and was "on-call" to clean up any spills or messes that occurred. His lunch break was unpaid time.

On the day of his injury, Conner left the school at the beginning of his lunch hour to go to the bank. When he returned to the school about fifteen minutes later, a truck was blocking the main entrance to the lot in which he normally parked. The school had other parking areas, but Conner preferred to park in that particular lot because it was close to his work area. This lot has two entrances: the main entrance, where a guard shack is located, and a back entrance closed by a locked, iron gate. After seeing that the front entrance was blocked by the truck, Conner drove to the back entrance and unlocked the gate. When the gate opened, it fell on

Conner, breaking his leg in two places. Conner could not work for more than seven months as a result of his serious injury.

## II.

The District contested Conner's request for workers' compensation benefits, asserting that he was not performing employment services at the time of his injury. The ALJ agreed and found Conner's injury not compensable. The ALJ found that Conner was not advancing his employer's interest because: (1) no one else was attempting to enter or leave the parking lot when he opened the gate; and (2) his employer would probably rather have had the back gate closed for security reasons, given that a guard shack was located only at the front gate. The ALJ also found that Conner was outside the time and space boundaries of his employment when he was injured and that, in the many years that Conner had worked for the District, he had never been asked to unlock this gate — that was the guard's job.

The Commission reversed the ALJ's decision. It concluded that, at the time of his injury, Conner had returned to his employer's premises and was providing a service to his employer by allowing access to the parking lot. The Commission also concluded that Conner was "on-call" because he was on the school grounds, carrying his walkie-talkie, and subject to being required to do work for the District even though he was on his lunch break.

## III.

This case turns on whether Conner was performing employment services when he was injured during a break. In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's findings, and we affirm if substantial evidence supports the decision. *Arkansas Methodist Hospital v. Hampton*, 90 Ark. App. 288, 293, 205 S.W.3d 848, 852 (2005). Substantial evidence exists if reasonable minds could reach the same conclusion as the Commission. *Ibid*. Because substantial evidence does not support the Commission's decision, we reverse.

A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed . . . ." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 2005). An employee is performing employment services when he or she is doing something generally required by his or her employer. *Ark. Methodist Hosp.*, 90 Ark. App.

at 294, 205 S.W.3d at 853. Conner was performing employment services if his injury occurred within the time and space boundaries of the employment when he was carrying out the District's purposes or advancing its interests directly or indirectly. *Collins v. Excel Specialty Products*, 347 Ark. 811, 817, 69 S.W.3d 14, 18 (2002).

Under our prior law, Conner's injury would have been compensable under the premises exception to the going-and-coming rule. Under that exception, although an employee was injured before he reached the place where he worked, the injury was sustained in the course of his employment if he was on the employer's premises. *Wentworth v. Sparks Regional Medical Center*, 49 Ark. App. 10, 13, 894 S.W.2d 956, 957 (1995). We have made clear, however, that Act 796 of 1993 eliminated the premises exception to the going-and-coming rule. *Hightower v. Newark Public School System*, 57 Ark. App. 159, 164, 943 S.W.2d 608, 610 (1997). We therefore turn to the precedents dealing specifically with employees injured during breaks.

Our cases seem to point in different directions. On one hand, we and the supreme court have held injuries compensable when the employee is required to stay on his or her employer's premises and perform duties, if the need arises, during the break. *E.g., Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999); *Wallace v. West Fraser South*, 365 Ark. 68, 225 S.W.3d 361 (2006). In these cases, the employee's presence and availability advanced the employer's interest. On the other hand, we have held injuries not compensable when the employer receives no benefit from the activity being performed during the break or when the activity is not inherently necessary for the performance of the employee's job, even though his or her presence or action benefits the employer. *E.g., McKinney v. Trane Co.*, 84 Ark. App. 424, 429, 143 S.W.3d 581, 585 (2004); *Smith v. City of Fort Smith*, 84 Ark. App. 430, 435, 143 S.W.3d 593, 596–97 (2004). We must explore these precedents in some detail to decide where Conner's case fits.

The Commission found this case similar to *Ray v. University of Arkansas*. There, this court held that a cafeteria worker was performing employment services when she slipped in the cafeteria during a fifteen-minute break. Ray was required to remain on her employer's premises during breaks, was paid for her breaks, and was required to assist students during her breaks if the need arose. 66 Ark. App. at 180–82, 990 S.W.2d at 560–62. Thus Ray's employer gleaned benefits from her being present in the cafeteria and available to help students during her breaks. *Ibid.* Here the

Commission found that, like in *Ray*, Conner "at the time of his injury, had returned to the employer's premises and was, once again, on-call and subject to being required to carry out all of his employment duties."

An injury suffered by an employee while on a break is compensable if the employer has imposed some duty or requirement to be fulfilled by the employee during the break. *E.g.*, *Moncus v. Billingsley Logging and American Ins. Co.*, 366 Ark. 383, 390, 235 S.W.3d 877, 883 (2006). In *Moncus*, although the employee was not engaged in the activity for which he was primarily employed when he was fatally injured, he was carrying out the express directions of his employer by following the employer to a job site to begin working. *Ibid*. Similarly, in *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002), Sands suffered a compensable injury when she was returning her purse to her locker on her way back from a scheduled break. For security reasons, Wal-Mart required employees to place their belongings in their locker before returning to work. 80 Ark. App. at 55, 91 S.W.3d at 95. Finally, in *Wallace v. West Fraser South*, our supreme court held that an employee suffered a compensable injury when he fell while walking over a board — a board placed by his employer across a ditch for employees to use as a bridge — when returning from a break. 365 Ark. at 70-75, 225 S.W.3d at 364-68. Wallace was advancing his employer's interest during the break because he remained on the clock, was not allowed to leave the premises, and could be called back to work. *Wallace*, 365 Ark. at 75, 225 S.W.3d at 367-68.

Further, our supreme court recently drew a bright-line rule for "residential employees." *Economy Inn & Suites v. Jivan*, 370 Ark. 414, 260 S.W.3d 281 (2007). In *Economy Inn*, a hotel manager who lived on the premises and was "on-call" twenty-four hours a day suffered a compensable injury while she was changing clothes in her bathroom to go to the gym. In so ruling, the supreme court employed an increased-risk analysis and held that "[Jivan's] presence on the premises during the fire exposed her to a greater degree of risk than someone who did not live on the premises. . . . Thus, [she] indirectly advanced her employer's interests, even while remaining on the premises during the fire." *Ibid*. (Conner's case has remained under submission for so long because of the need for *en banc* consideration and because we hoped the supreme court's decision in *Economy Inn* would consider and reconcile all the cases in point. It did not.)

In contrast, an injury suffered by a non-residential employee is not compensable where the employee is performing an activity merely for the purpose of attending to his personal needs. In *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004), a truck driver who was "off the clock" but "on-call" in a motel room provided by his employer was injured while turning on the lights in the bathroom. We held that he was not performing employment services because there was no evidence that his going into the bathroom was for any reason other than to attend to his own personal needs. 88 Ark. App. at 90-91, 194 S.W.3d at 797.

The activity being performed at the time of the injury must also be inherently necessary for the performance of the employee's job. For example, in *Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004), we affirmed the Commission's denial of benefits for an injury that occurred within normal working hours, on the employer's premises, and while he was advancing the employer's interest because the activity was not inherently necessary for Smith's job. He worked as a truck driver for Fort Smith at the city dump. The city allowed employees to remove debris from the dump for their own personal use, which, in turn benefitted the city. Smith was injured removing gravel for his own use. We rejected compensability because loading gravel for one's own use was not inherently necessary for the performance of Smith's job as a dump-truck driver. 84 Ark. App. at 435, 143 S.W.3d at 596-97.

Finally, the employer must get some benefit from the activity being performed at the time of the injury. *McKinney v. Trane Co.*, 84 Ark. App. 424, 429, 143 S.W.3d 581, 585 (2004). McKinney was injured when he jumped over some tube-sheet buckets to get a soda on his way to a smoke break. Though McKinney argued that he was obligated to take care of anything askew that he might observe during his break, this court concluded that he was involved in nothing generally required by his employer and was doing nothing to carry out the employer's purpose. Thus the employer gleaned no benefit from his activities on break and the injury was not compensable. 84 Ark. App. at 429, 143 S.W.3d at 585.

## IV.

We must now determine where Conner's injury fits within our cases and whether substantial evidence supports the Commission's finding of compensability. The District argues that Conner's activity at the time he was injured was similar to the personal

activities that were being performed in *McKinney* and *Smith*. Conner contends, however, that his situation more closely resembles the facts in *Ray* and *Wallace* because he was "on-call," on the District's premises, and advancing the District's interest at the time of his injury.

■■ First, we believe the Commission's reliance on *Ray* was misplaced. Unlike Ray, Conner was required to be available during his lunch break only if he decided to stay on the school campus. He was not required to stay on campus during breaks. The District did not pay Conner for time on his lunch break. And when this accident happened, he was returning from a personal errand. Unlike in *Wallace* — where the employer placed a board over a ditch for employees to use while crossing it — Conner was injured while opening a gate that the District kept locked. He had never unlocked this gate for the District, was not asked by the District to do so on the day of his accident, and this task was not part of his job. Unlike in *Sands*, Conner's employer did not require him to park in that particular lot or use this gate. Unlike in *Moncus*, Conner was not required to do anything during his lunch break unless. he chose to stay on the school grounds. And unlike the employee in *Economy Inn*, Conner was not a residential employee.

Though it is a close question, Conner probably was within the time and space boundaries of his employment when he was injured. He had returned to the District's premises and was headed to the cafeteria to eat lunch. Conner was "on-call," though not being paid for this break time. We must therefore consider whether what Conner was doing at the time of the injury was inherently necessary for Conner's performance of his job as a District custodian. It was not. In his then twenty-six years as a custodian, Conner had never before opened that gate. That task was someone else's job. Conner conceded that he did not have to open the gate to return to work on the day of his injury; there were other places to park at the school. No District employee asked Conner to open the gate.

■ We hold that *Smith*, *McKinney*, and *Cook* govern this case. Like in *Smith*, the activity that Conner was performing when he was injured was not inherently necessary to perform his job. Like in *McKinney*, Conner was involved in nothing required by his employer and was doing nothing to carry out his employer's purpose or benefit his employer. Like in *Cook*, he was attending to a personal need — parking in a convenient location of his choice.

Therefore, because Conner was not performing employment services for the District at the time of the accident, substantial evidence does not support the Commission's decision to award benefits.

Reversed.

PITTMAN, C.J., BIRD, and HEFFLEY, JJ., agree.

GRIFFEN and VAUGHT, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. The workers' compensation laws were created to provide fast, reliable, and predictable coverage for injured employees. The laws also provide protection for employers from the almost unlimited liability of the tort system. In this case, the Texarkana School District elected to waive this protection and deny coverage to a twenty-five-year employee because he chose to park in a lot more convenient to his work area. Reversing the ALJ's denial of benefits, the Commission crafted a well-reasoned opinion that relies on precedents from both our court and the supreme court. However, I believe that under our stringent standard of review, we are compelled to affirm. Therefore, I dissent.

The majority opinion ably surveys and summarizes the case law applicable to the issue of what constitutes performance of employment services in relation to an on-the-job injury. If a litigant, attorney, or the Workers' Compensation Commission is looking for a bright line to answer the question, the majority opinion shows that, if nothing else is settled, certainly we can say there is no bright line. However, what we do know for sure is that the question of whether the employee is performing employment services at the time of injury is a question of fact, and on questions of fact we defer to the Commission to determine the credibility of witnesses. *Williams v. L&W Janitorial, Inc.*, 85 Ark. App. 1, 145 S.W.3d 383 (2004). Our case law also clearly instructs an appellate court to affirm if, taking the evidence in the light most favorable to the Commission's decision, there is substantial evidence to support it. *Magnet Cove Sch. Dist. v. Barnett*, 81 Ark. App. 11, 97 S.W.3d 909 (2003). If we disagree with the factual determinations of the Commission, or if the evidence would support a contrary finding, we still must affirm if reasonable minds could reach the Commission's conclusion. *Linton v. Ark. Dep't of Corr.*, 87 Ark. App. 263, 190 S.W.3d 275 (2004).

With this in mind, I note that we affirm the Commission with great regularity on issues that we likely would have decided

the opposite way if we had been the fact finders. I also note that until very recently our court has never reversed a Commission decision finding that an employee *was* performing employment services at the time of his injury. The exceptions are *Economy Inns & Suites v. Jivan*, 97 Ark. App. 115, 253 S.W.3d 4 (2007), which was reversed by the supreme court in *Jivan v. Economy Inns & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007), and this case.

Here, the school district argues, and the majority holds, that *Cook v. ABF Freight Systems, Inc.*, 88 Ark. App. 86, 194 S.W.3d 794 (2004); *Smith v. City of Fort Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004); and *McKinney v. Trane Co.*, 84 Ark. App. 424, 143 S.W.3d 581 (2004), govern the decision in this case. In each of these cases our court affirmed the Commission's ultimate *denial* of benefits based on a factual finding that the claimant had not been performing employment services at the time of his injury. I agree that if the Commission had analyzed this case under these prece-dents and applied the facts of this case to those precedents, it might have reached a conclusion that I could have voted to affirm. However, there is no bright line, and the appellate courts of Arkansas have supplied ample authority for the Commission to have broad discretion in its interpretation. As such, we must affirm if the Commission relies on that authority and renders a cogent decision based on the evidence.

The Commission relied on and analyzed the facts in the instant case using both *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999) (affirming Commission's finding of employment services), and *Wallace v. West Fraser South*, 90 Ark. App. 38, 203 S.W.3d 646 (2005) (reversing Commission's finding of no employment services).[1] The Commission properly cited *Ray*, because Conner was "on call" at the time of his injury; the Commission properly cited *Wallace*, because Conner was returning to work after a break. These are both factual determinations that are supported in the evidence; *Ray* and *Wallace* therefore are both reliable appellate authority.

As easily as the majority attempted to distinguish *Ray* and *Wallace*, so can I distinguish *Smith*, *McKinney*, and *Cook*. In *Smith*, the employee was hauling debris from his employer's dump for his own use. Certainly Conner was not doing anything for his own use

---

[1] Our decision was affirmed by the supreme court in *Wallace v. West Fraser South*, 365 Ark. 68, 225 S.W.3d 361 (2006).

here; he was returning to work after a break. In *McKinney*, the employee was injured on his way to get a soda during his smoke break. Conner was finishing his break and returning to work. Finally, in *Cook* the employee, a truck driver, was in a motel room, after work hours, going to the bathroom; a factual scenario that has no relevance to this case at all.

How the majority decision in this case instructs the bar and the Workers' Compensation Commission is also of note. It surveys the case law on this issue and concludes that there are several cases with similar facts and conflicting conclusions. It encourages one to choose wisely and to anticipate (and apply) the precedent that the appellate court will apply. Until our precedent is consistent and coherent, I am satisfied to let the Commission do the picking and choosing and to affirm when the evidence supports its decision.

I am authorized to state that Judge Griffen joins in this dissent.